CONCORD OIL COMPANY and Crenshaw Royalty Corporation, Petitioners,

v.

**PENNZOIL EXPLORATION AND PRODUCTION COMPANY, Pennzoil Producing Company, Sanchez–O'Brien Oil & Gas Corporation, and John M. Robinson, Respondents.**

No. 94–0504.

Supreme Court of Texas.

Argued Jan. 8, 1998.

Decided Feb. 26, 1998.

Concurring Opinion filed June 5, 1998.

Rehearing Overruled June 5, 1998.

Andy Carson, Corpus Christi, Luther H. Soules, III, San Antonio, James P. Wallace, Ernest E. Smith, III, Austin, Laura H. Burney, San Antonio, Bruce M. Kramer, Lubbock, for Petitioners.

John G. Soule, Austin, Jeffrey T. Nobles, Houston, Frank Douglass, Austin, Tevis Herd, Midland, John M. Robinson, Maria Teresa Arguindegui, John Gaston, Houston, for Respondents.

OWEN, Justice, announced the judgment of the Court in an opinion in which PHILLIPS, Chief Justice, HECHT and ABBOTT, Justices, join.

The motions for rehearing were granted, and the opinion of the Court dated October 18, 1996 is withdrawn.

This case presents an issue with which this Court, other courts, and practitioners have struggled for many years: What interest has been conveyed in an oil and gas property when two differing fractions appear within the conveying instrument? The granting clause of the mineral deed in controversy describes the interest conveyed as a 1/96 interest in minerals, but a subsequent clause

states that the conveyance covers and includes 1/12 of all rentals and royalty of every kind and character. We hold that the conveyance at issue, when considered in its entirety, constituted a grant of a 1/12 interest in any rights or benefits under the lease in existence at the time of the grant and the possibility of reverter of a 1/12 interest in the mineral estate. Accordingly, we reverse the judgment of the court of appeals and render judgment in favor of Concord and Crenshaw.

I

The mineral deed at issue, which we refer to as the Concord deed, was executed in 1937 by A.B. Crosby as the grantor. It covers Survey Sixty-four in Zapata County. The grantee was Southland Lease and Royalty Corporation, through whom petitioners Concord Oil Company and Crenshaw Royalty Corporation claim. Crenshaw acquired Southland's interest and subsequently executed two oil and gas leases under which Concord is the lessee. (We use "Concord" to refer to both of the petitioners in the balance of this opinion.) The Concord deed provides in relevant part:

> That I, A.B. Crosby ... Grant, Sell and Convey unto Southland ... an undivided one-ninety sixth (1/96) interest in and to all of the oil, gas and other minerals in and under, and that may be produced from Survey Sixty-four ... together with the right ... of ingress and egress at all times for the purpose of prospecting, drilling, mining and exploring said lands for oil, gas and other minerals ... together with all rights of every kind and character necessary and convenient to the full use and enjoyment of such estate herein conveyed....
>
> While the estate hereby conveyed does not depend upon the validity thereof, neither shall it be affected by the termination thereof, this conveyance is made subject to the terms of any valid subsisting oil, gas and/or mineral lease or mineral lease or leases on above described land or any part thereof, but covers and includes one-twelfth (1/12) of all rentals and royalty of every kind and character that may be payable by the terms of such lease or leases

insofar as the same pertain to the above described land, or any part thereof.

This deed was executed on August 5. The day before, the grantor Crosby had acquired an undivided 1/12 interest in the minerals under a deed identical to the Concord deed in all respects but one: the fraction in the granting clause. The granting clause in the deed to Crosby contained the fraction "one-twelfth (1/12)" rather than 1/96.

The parties have stipulated that at the time each of these deeds was executed, an oil and gas lease that provided for a 1/8 royalty was outstanding. That lease expired before any of the parties to this case entered into leases covering Survey Sixty-four.

In 1961, Crosby executed another mineral deed covering Survey Sixty-four in which he purported to convey to John M. Robinson an undivided 7/96 interest in the minerals. Robinson subsequently entered into an oil and gas lease with Pennzoil Producing Company. Through various transactions, Pennzoil Exploration and Production Company succeeded to interests under that lease, and Sanchez O'Brien Oil & Gas Corporation acquired a 25% interest in the lease. (Robinson and the other respondents are referred to in this opinion collectively as Pennzoil unless the context indicates otherwise.)

Pennzoil completed producing wells on the property, and this dispute ensued. Concord sought a determination of its interest and sued for damages equal to the value of past production by Pennzoil. Pennzoil counterclaimed seeking a determination of its rights. The case was tried to the court on stipulated facts. Concord's primary contention was that the deed at issue unambiguously conveyed a 1/12 interest in the minerals. Concord asserted three other theories of recovery in the alternative. Concord's first alternative claim was that the deed was ambiguous and that it conveyed 1/12 of all rentals and 1/12 of *all* royalty attributable to *all* production under any lease that included Survey Sixty-four, not just the proportionate amount of royalty that would be attributable to production from Survey Sixty-four. (Apparently, Concord contended that this deed should be construed in the same manner as that in *Hoffman v. Magnolia Petroleum Co.,*

273 S.W. 828 (Tex. Comm'n App.1925, holding approved).) The second alternative contention was that the deed conveyed 1/12 of rentals and royalty on production attributable to Survey Sixty-four. Concord's final alternative claim was that it was entitled to a 1/96 royalty.

Pennzoil contended that the Concord deed conveyed only a 1/96 interest in the minerals. Pennzoil acknowledged that the deed had also conveyed 1/12 of rentals and royalty, but took the position that the 1/12 interest was limited to the lease that existed at the time the deed was executed. Under Pennzoil's view of the case, the 1/12 interest terminated upon the expiration of that lease, which occurred well before the Crosby conveyance to Robinson, Pennzoil's lessor.

The trial court found in favor of Pennzoil and entered a take-nothing judgment against Concord. The court of appeals affirmed. 878 S.W.2d 191. The basis of the court of appeals' holding was that the Concord deed did not convey any interest in future leases. The court concluded that the grant of 1/12 of rentals and royalty was limited to the lease in existence at the time of the conveyance, and that upon expiration of that lease, Concord was left with only a 1/96 interest in the minerals. The court relied on what has been termed the "two-grant" or "multiple-grant" theory in concluding that the deed did not convey a single estate, but instead conveyed a 1/96 interest in the minerals in addition to a 1/12 interest in the lease existing at the time of the grant. Id. at 196. For the reasons discussed below, we disagree with this construction of the deed.

## II

This case is not the first one in which we have considered deeds or other conveyances of mineral interests that contain two or more differing fractions. The proper construction of such instruments has been a recurring issue. See, e.g., Garrett v. Dils Co., 157 Tex. 92, 299 S.W.2d 904 (1957); Tipps v. Bodine, 101 S.W.2d 1076 (Tex.Civ.App.—Texarkana 1937, writ ref'd). Most recently, we considered oil and gas conveyances with differing fractions in Luckel v. White, 819 S.W.2d 459 (Tex.1991), and Jupiter Oil Co. v. Snow, 819 S.W.2d 466 (Tex.1991).

In Luckel, we held that the primary objective in construing mineral and other grants is to determine the intent of the parties from all the language in the instrument. Luckel, 819 S.W.2d at 461. We recognized that the intent of the parties must be determined from what they expressed in the instrument, read as a whole, and that the actual, subjective intent of the parties will not always be given effect even if we were able to discern that subjective intent. Id. at 462. We declined to rely on labels given to clauses, such as "granting," "warranty," "habendum," and "future lease." Id. at 463. We expressly overruled our decision in Alford v. Krum, 671 S.W.2d 870 (Tex.1984), which had elevated the granting clause over another provision in the conveying instrument and had given it controlling weight. Luckel, 819 S.W.2d at 464.

Commentators have written fairly extensively about our decisions in this area of oil and gas law, often debating what theories were or were not applied.[1] However, with the exception of Alford, our decisions contain a unifying principle: the entire document must be examined to glean the parties' intent. See Luckel, 819 S.W.2d at 462. Apparent inconsistencies in the conveying instrument must be harmonized, if possible, by

---

1. A sampling of treatises and articles addressing so-called multiple-grant conveyances and decisions of this Court includes: RICHARD W. HEMINGWAY, THE LAW OF OIL AND GAS §§ 9.1–.2 (3d ed.1991); Laura H. Burney, The Regrettable Rebirth of the Two–Grant Doctrine in Texas Deed Construction, 34 S. TEX. L.J. 73 (1993); Tevis Herd, Deed Construction and the "Repugnant to the Grant" Doctrine, 21 TEX. TECH L.REV. 635 (1990); Stuart C. Hollimon & Robert E. Vinson, Jr., Oil, Gas, and Mineral Law, Annual Survey of Texas Law, 45 SW. L.J. 1965 (1992); Bruce M. Kramer, The Sisyphean Task of Interpreting Mineral Deeds and Leases: An Encyclopedia of Canons of Construction, 24 TEX. TECH L.REV. 1 (1993); Phillip E. Norvell, Pitfalls in Developing Lands Burdened by Non–Participating Royalty: Calculating the Royalty Share and Coexisting with the Duty Owed to the Non–Participating Royalty Owner by the Executive Interest, 48 ARK. L.REV. 933 (1995); Joseph Shade, Petroleum Land Titles: Title Examination & Title Opinions, 46 BAYLOR L.REV. 1007 (1994).

looking at the document as a whole. *Id.* In the cases that we have considered in the past, when conveyances contained apparent inconsistencies between the fraction in the granting clause and fractions in other provisions, it was evident from the instrument as a whole that the grantor had conveyed a larger interest than the granting clause otherwise indicated. In those cases, provisions other than the granting clause gave rights to the grantee that, when considered in the aggregate, amounted to a larger fraction of the mineral or royalty interest than specified in the granting clause.

### A

One of the first decisions that confronted a conveyance with more than one fraction was *Tipps v. Bodine,* 101 S.W.2d 1076 (Tex.Civ. App.—Texarkana 1937, writ ref'd). The granting clause was couched in terms that typically would indicate that a 1/16 interest in the minerals had been conveyed. *Id.* at 1076. Standing alone, this language would indicate that the grantee would receive only 1/16 of royalties payable under any lease, 1/16 of delay rentals, and 1/16 of bonuses paid upon execution of future leases. But the mineral deed in *Tipps* contained three other clauses under which the grantor effectively conveyed a larger fraction of each of the incidents of the mineral estate. The grantor conveyed: a 1/2 interest in benefits under the existing lease, a 1/2 interest in the possibility of reverter and executive rights (the "lease interest"), a 1/2 interest in all benefits under future leases (which would have been the result of a grant of 1/2 of the possibility of reverter in any event), and, for good measure, a 1/2 interest in "all future events." The *Tipps* court held that these provisions accomplished the conveyance of a 1/2 interest in the minerals even though the granting clause contained the fraction "1/16." *Id.* at 1079. The intent of the parties was evident from the four corners of the instrument.

The facts in *Garrett v. Dils Co.,* 157 Tex. 92, 299 S.W.2d 904 (1957), were similar to those in *Tipps.* The granting clause purported to convey a 1/64 interest in the minerals. *Garrett,* 299 S.W.2d at 905. However, a subsequent clause identified an existing lease and provided that "this sale ... covers and includes one-eighth of all ... rental or royalty due." *Id.* The deed in *Garrett* also had a clause addressing future events that stated that the grantee was to own "an undivided one-eighth of the lease interest and all future rentals ... and other mineral privileges ... [the grantee] owning one-eighth of one-eighth of all oil, gas, and other minerals ... together with one-eighth interest in all future rents." *Id.* We held that because the grantee had the right to receive 1/8 of the royalty together with 1/8 of the lease interest (the executive rights) and future rentals, he was "in reality ... the owner of one-eighth of the minerals in the land." *Id.* at 907. Once again, the instrument spelled out what the grantee was to receive, which amounted to 1/8 of all the attributes of mineral ownership.

The conflict in the royalty deed at issue in *Luckel* was not as readily apparent as those in *Tipps* and *Garrett.* In *Luckel,* as long as the royalty payable under any given lease was a 1/8 royalty, the granting clause seemed consistent with other parts of the deed. The granting and warranty clauses of the royalty deed at issue spoke of a 1/32 royalty. 819 S.W.2d at 461. A clause addressing an existing lease and another clause dealing with subsequent leases stated, respectively, that the grantee "shall receive one-fourth" and "shall be entitled to one-fourth" of all royalties, which would equal a 1/32 royalty under a 1/8 royalty lease. *Id.* Problems in construing the deed arose when leases providing for a 1/6 royalty were subsequently obtained. *Id.* We held that 1/4 of royalty, rather than a fixed 1/32 royalty interest, was conveyed. *Id.* at 464. The grant of a 1/32 royalty, however, was held to be a floor for the royalty interest. *Id.* at 464–65. The 1/4 of royalty otherwise payable under any given lease could not result in less than a 1/32 royalty. *Id.*

On the same day that we decided *Luckel,* we also decided *Jupiter Oil Co. v. Snow,* 819 S.W.2d 466 (Tex.1991). The granting clause of the mineral deed in *Jupiter Oil* described a 1/16 interest in the minerals. *Id.* at 468. Although not set out fully in this Court's opinion, another paragraph in the deed dealt with an existing lease and stated that the

parties intended that the grantee "receive 1/16 part of the oil, gas or other mineral" produced under the lease then in effect and that the grantors intended to convey "one-half of the interest they now have in such production under said lease." *Snow v. Jupiter Oil Co.*, 802 S.W.2d 354, 356 (Tex.App.— Eastland 1990), *rev'd*, 819 S.W.2d 466 (Tex. 1991). That lease provided for a 1/8 royalty. *Jupiter Oil*, 819 S.W.2d at 467. Another provision in the mineral deed dealt with termination of the then-existing lease and recited that upon that event, the grantee was to "have and hold" 1/2 of all minerals. *Id.* at 468. We held that this deed conveyed a 1/2 interest in the possibility of reverter and that the grantee owned a 1/2 interest in the minerals upon termination of the lease that was outstanding at the time of the conveyance. *Id.* at 469. The result in *Jupiter Oil* was fully consistent with *Luckel*, *Garrett*, and *Tipps*.

### B

One case that is sometimes cited among the decisions addressing conflicting fractions is *Richardson v. Hart*, 143 Tex. 392, 185 S.W.2d 563 (1945). While some of the language used in that opinion contributed to the rise of the so-called "two-grant" theory, we were not in fact confronted with conflicting fractions in *Richardson*. Nor did we reach the question of what interest the grantee owned upon expiration of the lease in effect at the time of the grant. The only issue in *Richardson* was the fraction of royalty to which the grantee was entitled while an existing lease, identified in the conveyance, continued in effect. *Id.* 185 S.W.2d at 564–65. Although the opinion in *Richardson* set out a provision that defined the interest of the grantee upon expiration of the then-existing lease, that provision was not under consideration. We were concerned only with the royalty interest under a lease that was in existence at the time of the grant. *Id.* We held that the mineral deed conveyed "two separate and distinct estates" that happened to be equal. *Id.* The mineral interest was 1/16 of 1/8, which was 1/128, and the royalty interest was 1/16 of 1/8, which was 1/128, "*of* all ... royalty due or to be paid." *Id.* at 565 (emphasis added). Accordingly, the succes-

sors to the rights of the grantee were entitled to 1/128 of the 1/8 royalty to be paid under the existing lease (1/1024 of production). *Id.* The dispute boiled down to how to construe the use of the word "of" in a royalty conveyance.

Our decision in *Benge v. Scharbauer*, 152 Tex. 447, 259 S.W.2d 166 (1953), is sometimes cited as applying a two-grant theory. However, that case turned on the application of the *Duhig* doctrine. We held in *Duhig v. Peavy–Moore Lumber Co.*, 135 Tex. 503, 144 S.W.2d 878, 880–81 (1940), that when a grantor represents and warrants that it owns a particular interest, it is estopped from claiming that the deed granted less than the grantor owned. In *Benge*, the grantors owned only a 3/4 interest in the minerals. 259 S.W.2d at 167. However, the grantors purported to convey the entire mineral estate with a reservation of a 3/8 interest in the minerals. The deed also gave the grantee sole executive rights, but expressly provided that the grantors were to receive 3/8 of the bonuses, rentals, and royalties payable under any lease. *Id.* We held that the warranty extended only to what the grantor purported to convey, in this case 5/8 of the interest in the minerals, and that the *Duhig* doctrine did not extend to the reservation of 3/8 of the bonuses, rentals, and royalties. *Id.* at 169. Thus, the grantor was left with a 1/8 interest in the minerals, but 3/8 of certain benefits payable under any lease.

Another decision of this Court that is often discussed in conjunction with conflicting fractions in mineral or royalty deeds is *Woods v. Sims*, 154 Tex. 59, 273 S.W.2d 617 (1954). The dispute in that case arose because the mineral deed stated that the property contained 200 acres and, further, that the intention of the grantee was to purchase a 25/200 acre mineral interest. *Id.* 273 S.W.2d at 618–19. The tract actually contained 226.88 acres. *Id.* at 619. The granting clause recited that a 25/200 interest in the minerals was conveyed. *Id.* Similarly, the paragraphs addressing the royalty to be paid under existing and subsequent leases provided for 25/200 of royalty. *Id.* We held that the deed conveyed 25/200 of the royalty, not 25/226.88. *Id.* at 620. We expressly noted in that deci-

sion that we were not deciding what interest in the *minerals* the grantee received since the petitioners had "acquiesced in the holdings" of the trial court and the court of appeals on that issue. *Id.* (The lower courts had concluded that the deed conveyed an undivided 47.5/226.88 interest in the minerals in place. *Id.*)

### C

In each of the cases in which the fraction in the granting clause was smaller than those in subsequent parts of the conveyance, the conveyance contained explicit, unambiguous provisions that directed what interest the grantee was to receive under various circumstances. In each of these cases, the fraction was consistent in all clauses except the granting clause. And, in each of these cases, when all the rights of the grantee under the specific provisions following the granting clause were considered and aggregated, the grantee had in fact received an estate larger than that otherwise indicated by the granting clause. The principal import of our decision in *Luckel* is that the document must be read as a whole to see what actually has been conveyed. While we have not always articulated this precept, the result in each case, other than *Alford,* has been consistent with the directives in *Luckel* that the conveyance must be considered as a whole to determine the intent of the parties and that seemingly conflicting provisions are to be harmonized if possible. *Luckel,* 819 S.W.2d at 462.

This does not mean that no deed or grant should be construed to convey mineral and royalty interests of different magnitudes. The owner of a mineral interest may convey one or more, or fractions of one or more, of any attribute of the mineral estate, including but certainly not limited to a fraction of the mineral interest, a fraction of royalties, the right to receive delay rentals, and the executive rights. But when differing fractions appear in a conveyance, we must discern the intent of the parties from the four corners of the document. In other words, as we held in *Luckel,* we will consider the entire instrument to determine what has been conveyed.

### III

The Concord deed does not give as much guidance as the conveyances considered by this Court in other cases. One of the primary points of dispute is whether the provision that refers to "one-twelfth (1/12) of all rentals and royalty" applies only to leases in existence at the time the grant was made or whether it applies to all leases. The court of appeals framed the issue as whether the Concord deed contained a "future lease" clause and concluded that it did not. 878 S.W.2d at 194–95.

Whether a deed such as the one under consideration contains a "future lease" clause is not necessarily dispositive of what interest was conveyed. The *substance* of what has been conveyed must be determined taking into account all provisions of the conveyance. The parties' intent must be determined from the document as a whole, not by the presence or absence of a certain provision.

### A

█ One of the first questions that must be answered is whether it is evident within the four corners of the conveyance that two differing interests were to be conveyed. Although the Concord deed gives only sparse direction, we conclude that it does not evidence an intent to convey two separate interests. The opening paragraph of the deed describes a 1/96 interest in the "estate" conveyed. The second paragraph recites that "the estate hereby conveyed ... covers and includes one-twelfth (1/12) of all rentals and royalty of every kind and character." This language indicates that only a single "estate" is being conveyed, not two separate interests. Moreover, if the estate were only a 1/96 interest in the minerals, it would cover and include only 1/96 of the rents and royalty. A 1/96 mineral interest could not "cover[ ] and include[ ] one-twelfth (1/12) of all rentals and royalties."

Another indication that a single estate rather than two estates with differing durations was conveyed is the recitation in the deed that the estate being conveyed "does *not depend upon the validity* ... [nor] shall it be affected by the termination" of leases. If the estate conveyed was a 1/12 mineral inter-

est only for the life of the lease that was in effect at the time the deed was executed and became a 1/96 mineral interest upon expiration of that lease, "the estate hereby conveyed" is unquestionably "affected by the termination" of that lease. The construction placed on the deed by the court of appeals and by the dissent ignores the express direction of the deed. The dissent and the court of appeals concede, as they must, that the grantee was entitled to 1/12 of rents and royalties as long as the lease in existence at the time of the conveyance continued in effect. They cannot explain how, upon termination of that lease, "the estate hereby conveyed," which included 1/12 of rents and royalties under the existing lease, became 1/96 of rents and royalties under all future leases and yet was not "depend[ent] upon" or "affected by" the termination of the existing lease.

The construction adopted by the court of appeals also does violence to the express provisions of the conveyance in concluding that two separate estates were conveyed, a 1/96 mineral interest and "in addition," a "1/12 interest in the existing lease which expired when the lease terminated." 878 S.W.2d at 196. No language in the conveyance indicates that the 1/12 interest in rents and royalties was meant to be *in addition to* or *separate from* the estate granted in the opening clause. Such a construction also raises a knotty problem. The court of appeals concluded that the grant of a 1/96 mineral interest and the grant of 1/12 interest in the existing lease took effect at the same time, specifically, that the grant of a 1/96 mineral interest "remained the same throughout." *Id.* If that were the case, the deed would have granted 1/96 of the minerals pursuant to which the grantee would receive 1/96 of the rents and royalties under the then-existing lease *plus* a 1/12 interest pursuant to which the grantee would receive another 1/12 (8/96) of rents and royalties. The sum of these two grants would be 9/96 of rents and royalties under an existing lease, which is more than 1/12. *See* David E. Pierce, *Developments in Nonregulatory Oil and Gas Law: The Continuing Search for Analytical Foundations, in* 47 INSTITUTE ON OIL & GAS LAW & TAXATION § 1.05 (1996)

(criticizing the decision of the court of appeals in this regard). Nothing in the conveyance indicates that the parties intended to convey a 9/96 interest under the then-existing lease. The dissent implicitly reasons that the grant of a 1/96 mineral interest was either deferred until the expiration of the existing lease or that the grant of a 1/96 interest expanded to a 1/12 interest during the life of the lease outstanding at the time of this conveyance. But here again, there is absolutely no language in the deed to support such a construction. The grant in the granting clause was a present conveyance. We should not and do not resort to a strained construction of this deed that ignores its express provisions. The intent of the parties can be determined from the four corners of the document which evidences the intent to convey a single estate. The only issue is the size and character of that single estate.

As discussed above, when an instrument effectively transfers the attributes of a 1/2 interest in the minerals, a 1/2 interest in the minerals has been conveyed even though the fraction in the granting clause is less than 1/2. *See Garrett,* 299 S.W.2d at 905, 906–07 (fraction in granting clause 1/64 and in other clauses 1/8; 1/8 interest conveyed); *Tipps,* 101 S.W.2d at 1079 (fraction in granting clause 1/16 and in other clauses 1/2; 1/2 interest conveyed); *see also Jupiter Oil,* 819 S.W.2d at 468 (fraction in granting clause 1/16 and in subsequent clause 1/2; 1/2 interest conveyed). The Concord deed similarly contains clauses other than the granting clause that bear on the proper construction of the conveyance. However, it is not as explicit as the deeds in *Luckel, Jupiter Oil, Garrett,* or *Tipps,* and it is by no means a model for future drafters. The court of appeals distinguished *Luckel, Garrett* and *Jupiter,* and found the decision in *Pan American Petroleum Corp. v. Texas Pacific Coal & Oil Co.,* 340 S.W.2d 548, 557–58 (Tex.Civ.App.— El Paso 1960, writ ref'd n.r.e.), persuasive. We need not and do not decide today the proper construction of the deed in *Pan American.*

Our decision in this case does not depend on the presence or absence of a "future lease" clause, which the court of appeals

found dispositive. *See* 878 S.W.2d at 194–95. As we have seen, the intent to convey a single estate that includes 1/12 of rents and royalties, rather than two estates of differing magnitudes and duration, is evident from the conveyance. We do note, however, that the deed should be construed to include future leases, not just the lease in existence at the time this deed was executed. The conveyance provides in this regard that it is subject to "the terms of any valid subsisting oil, gas and/or mineral lease or mineral lease or leases" and "covers and includes one-twelfth (1/12) of all rentals and royalty of every kind and character that may be payable by the terms of such lease or leases." The court of appeals found the word "subsisting" to mean only leases in existence at the time of the conveyance and held that the provision did not extend to future leases. 878 S.W.2d at 197. If the deed had simply said "any valid subsisting oil, gas and/or mineral lease," we might be inclined to agree. But it says "any valid subsisting oil, gas and/or mineral lease *or mineral lease or leases.*" (emphasis added). The deed covers and includes 1/12 of the rentals and royalty on any "mineral lease or lease" as well as those leases subsisting at the time of the grant. Any other construction ignores the phrase "or mineral lease or leases."

■ The final question to be resolved is whether the Concord deed conveyed an interest in minerals or only an interest in rents and royalty. Concord has argued in the alternative that the grant was 1/12 of royalty together with 1/12 of delay rentals. On the day Crosby executed the conveyance, the property was leased. He owned a 1/12 interest in all benefits under the lease and a 1/12 interest in the possibility of reverter of the mineral estate. The Concord deed left him with no interest in royalty and no right to receive delay rentals under any lease. If the Concord deed granted only Crosby's rights to royalty and rental, Crosby would have retained a possibility of reverter in 1/12 of the interest in the minerals, less 1/12 of rents and royalty. Crosby would thus have retained a right to develop upon reverter of the minerals, executive rights, and the right to 1/12 of any bonuses upon execution of any future leases. The fact that the provision

that "covers and includes" 1/12 of rents and royalty contains no reference to bonuses or executive rights could be considered an indication that the conveyance was more akin to a royalty interest than a grant of a 1/12 interest in the minerals.

But a royalty interest is a nonpossessory one, and it does not include the right to receive delay rentals. The right to delay rentals is another attribute of the "bundle of rights" associated with a severed mineral estate. *See French v. Chevron U.S.A., Inc.,* 896 S.W.2d 795, 797 (Tex.1995); *Altman v. Blake,* 712 S.W.2d 117, 118 (Tex.1986). The Concord deed grants not only 1/12 of delay rentals, but also extensive, detailed rights of possession to drill for and produce oil and gas, including the right to lay pipeline and to build tanks, power stations, telephone lines, and storage and marketing facilities. The granting clause contains classic language used in granting an interest in minerals.

Bearing in mind that our objective is to determine the intent of the parties in light of all the provisions of the deed, we conclude that the Concord deed conveyed an *interest in minerals.* Because the deed evidences the intent to convey a single estate that covered and included 1/12 of rents and royalties under all leases, and because other provisions in the deed indicate that a possessory, mineral estate was conveyed, we hold that the Concord deed conveyed a 1/12 interest in the minerals.

**B**

The parties and amici address at some length the history of mineral deeds that contain multiple fractions. Concord offers this history as a reason to construe the deed in question as conveying an interest in minerals larger than the granting clause otherwise indicates. We note that the use of "1/12" and of "1/96" in the Concord deed was, in all probability, no accident. This Court has taken judicial notice of the fact that the prevailing royalty in private oil and gas leases was a 1/8 royalty during the era in which the Concord deed was executed. *See, e.g., Garrett,* 299 S.W.2d at 907; *see also Luckel,* 819 S.W.2d at 462; *id.* at 465 (Phillips, C.J.,

dissenting). We also note that the use of so-called multiple-grant deed forms arose as a result of the decision in *Caruthers v. Leonard*, 254 S.W. 779, 782–83 (Tex. Comm'n App.1923, judgm't adopted), which held that a grant of the mineral interest did not include the right to share in delay rentals. (We expressly overruled that decision in *Hager v. Stakes*, 116 Tex. 453, 294 S.W. 835, 838 (1927), and *Harris v. Currie*, 142 Tex. 93, 176 S.W.2d 302, 305–06 (1943).) The opinion of the court of appeals in this case ably sets out the history of multiple-fraction deeds. 878 S.W.2d at 193 & n. 2. We have seen that when mineral or royalty deeds contain differing fractions, the fractions almost invariably involve a multiple of eight.

■ Concord and some commentators suggest that conflicting fractions appear in so many deeds because of a common misconception of what an owner of a mineral interest retains after the execution of a lease. *See, e.g.,* 2 HOWARD R. WILLIAMS & CHARLES J. MEYERS, OIL AND GAS LAW § 327.2, at 94.1 (1980); Frank W. Elliott, Jr., *The Fractional Mineral Deed "Subject To" a Lease*, 36 TEX. L.REV. 620, 622 (1958). Commentators have also observed that most grantors do not intend to convey interests of different magnitudes. *See, e.g.,* 2 WILLIAMS & MEYERS, *supra*, § 340.2 (1995); Ernest E. Smith, *The "Subject To" Clause*, 30 ROCKY MTN. MIN. L. INST. § 15.02[1] (1985). Under a typical lease providing for a 1/8 royalty, the lessor may think that the interest retained is 1/8 of the minerals including 1/8 of the royalties. This misconception is evidenced in a few decisions. *See, e.g., Tipps*, 101 S.W.2d at 1078 (lessor of mineral interest "retained one-eighth of all the minerals in place, subject to the lease"); *Jupiter Oil*, 819 S.W.2d at 468–69 (citing and following *Tipps* on this point). In actuality, a lease conveys a fee simple determinable with the possibility of reverter. When the lessor owns all the mineral estate (8/8) and executes an oil and gas lease, the lessor has conveyed all the mineral estate (8/8) but has retained a possibility of reverter in the entire mineral estate (8/8). *See generally Luckel*, 819 S.W.2d at 464. The lessor also receives, of course, all rights that are bargained for in connection with the lease, which usually include the payment of royalties, delay rentals, and bonuses.

The decision in *Tipps*, which helped to foster this so-called "estate misconception," went so far as to say that the use of differing fractions was the proper method of conveyance when a mineral lease was outstanding at the time of the grant. 101 S.W.2d at 1079. In referring to the conflicting fractions, the court said, "No language has been suggested, and we know of none, that would more clearly and accurately express the intention of the parties or that would have the legal effect intended by them than that used." *Id.* The *Tipps* court thus blessed the use of "1/16" in the granting clause and "1/2" in subsequent clauses when the grantor owned the possibility of reverter in the entire mineral estate and wished to convey 1/2 of that interest at a time when the property was subject to a mineral lease providing for a 1/8 royalty. *Tipps* was decided in 1936, and the Concord deed was executed in 1937. Under the rationale of *Tipps*, it would have been appropriate for Crosby to have inserted "1/96" in the granting clause and "1/12" in other provisions of the Concord deed if he intended to convey a 1/12 interest in the minerals.

We are thus mindful of extant circumstances at the time the Concord and other deeds were executed. But we do not base our decision in this case on the theory of an "estate misconception." An understanding of the misconceptions under which some operated is helpful and instructive, but not dispositive. We cannot say categorically that no conveyance with differing fractions effectuated a grant of one fractional interest in the mineral estate and a different fractional interest in royalties under either existing or future leases.

Concord and amici urge this Court to adopt "firm" or "bright-line" rules for construing mineral and royalty conveyances that contain differing fractions. Bright-line tests that focus only on the predominance of one clause over another or that strictly construe each provision in a conveyance as a separate, independent grant, or that choose the larger of conflicting fractions are arbitrary. They will not always give effect to what the conveyance provides as a whole. The principles

set out in *Luckel* and the approach taken in *Garrett* are designed to give effect to the intent of the parties as actually expressed within the four corners of the conveyance and to harmonize provisions that appear to conflict.

### IV

The remaining issue is the question of prejudgment interest. We note at the outset that this dispute does not involve a contract or account, and article 5069–1.03 does not apply. TEX.REV.CIV. STAT. art. 5069–1.03. No contract or other agreement exists between any of the petitioners and any of the respondents.

Pennzoil contends that sections 91.402(b)(1) and 91.403(b) of the Texas Natural Resources Code govern and that no interest is owed. We agree. Section 91.403(a) of the statute provides for interest on payments from the proceeds of the sale of oil or gas if the payments are made after the time limits set out in section 91.402. TEX. NAT. RES. CODE §§ 91.402, 91.403(a). However, the statute permits a payor to withhold or suspend payment without interest when there is a dispute concerning title. The Code provides in pertinent part:

> § 91.402. **Time for Payment of Proceeds**
>
> . . . .
>
> (b) Payments may be withheld without interest beyond the time limits set out in Subsection (a) of this section when there is:
>
> > (1) a dispute concerning title that would affect distribution of payments;

TEX. NAT. RES.CODE § 91.402(b).

> § 91.403. **Payment of Interest on Late Payments**
>
> . . . .
>
> (b) Subsection (a) of this section does not apply where payments are withheld or suspended by a payor beyond the time limits specified in Section 91.402 of this

code because of the conditions enumerated in Section 91.402 of this code.

TEX. NAT. RES.CODE § 91.403(b).

There is no doubt that a dispute concerning title exists in this case. We do note that both Concord and Pennzoil are working interest owners and that there is some indication in the legislative history of the statute that it was designed to protect the interests of royalty owners. The House Bill Analysis stated:

> Currently, there is no specific law to protect royalty owners in Texas from intentional practices to delay their royalty checks. While it is generally accepted that a great deal of these delays stem from legitimate title problems, it is also recognized that some of these delays are intentional and should be addressed by the Legislature.

HOUSE COMM. ON ENERGY, BILL ANALYSIS, Tex. H.B. 1775, 68 th Leg., R.S. (1983).

Nevertheless, the language of the statute is not limited to royalty interests. It is broad enough to encompass working interest owners and operators. Significantly, among the many briefs received in this case, no party or amicus contends that the statute reaches only royalty payments. Further, sections 91.402 and 91.403 have been applied to preclude the recovery of prejudgment interest in a suit between working interest owners with no discussion of whether the statute was intended to reach beyond royalty disputes. *See Edwin M. Jones Oil Co. v. Pend Oreille Oil & Gas Co.,* 794 S.W.2d 442, 450 (Tex.App.—Corpus Christi 1990, writ denied); *Hondo Oil & Gas Co. v. Texas Crude Operator, Inc.,* 970 F.2d 1433, 1439 (5th Cir. 1992). Concord and Pennzoil fall within the definitions of "payee" and "payor," respectively, under this statute:

> § 91.401. **Definitions**
>
> In this subchapter:
>
> > (1) "Payee" means any person or persons legally entitled to payment from the proceeds derived from the sale of oil or gas from an oil or gas well located in this state.
> >
> > (2) "Payor" means the party who undertakes to distribute oil and gas proceeds to the payee, whether as the purchaser of the

production of oil or gas generating such proceeds or as operator of the well from which such production was obtained or as lessee under the lease on which royalty is due. The payor is the first purchaser of such production of oil or gas from an oil or gas well, unless the owner of the right to produce under an oil or gas lease or pooling order and the first purchaser have entered into arrangements providing that the proceeds derived from the sale of oil or gas are to be paid by the first purchaser to the owner of the right to produce who is thereby deemed to be the payor having the responsibility of paying those proceeds received from the first purchaser to the payee.

TEX. NAT. RES.CODE § 91.401(1)-(2).

As an owner of an interest in the minerals, Concord has a legal right to compensation for oil and gas that has been produced from Survey Sixty-four and is a "payee." Pennzoil is the operator of the wells that have been drilled and is a lessee under a valid lease or leases covering all of the mineral interests other than the 1/12 interest at issue in this case.

■ Concord and amici contend that the exceptions under section 91.402(b) should only apply to an "innocent stakeholder" and not to a payor who claims an interest in the proceeds. They further argue that, at a minimum, Pennzoil was required to interplead the disputed amounts into the registry of the court or to deposit them in an interest-bearing account. The express provisions of the statute do not support this contention. There is no requirement that when a title dispute arises, the payor must pay interest if it unsuccessfully asserts that it is entitled to some or all of the proceeds or that the payor must interplead or deposit the funds. *See Edwin M. Jones,* 794 S.W.2d at 450 (holding that operator did not owe prejudgment interest and was not required to deposit funds into the court's registry or place them in an interest bearing account); *Hondo,* 970 F.2d at 1439 (holding prejudgment interest was not recoverable even though payor claimed an interest in the disputed amounts).

■ Finally, Concord and amici contend that equitable prejudgment interest should be awarded under the common law, citing *Perry Roofing Co. v. Olcott,* 744 S.W.2d 929 (Tex.1988). We held in that case that courts have the equitable power to award prejudgment interest and expanded the holding of *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 552 (Tex.1985), which dealt with prejudgment interest in personal injury cases, to other types of claims. *Id.* at 930; *see also Rio Grande Land & Cattle Co. v. Light,* 758 S.W.2d 747, 748–49 (Tex.1988) (per curiam) (awarding prejudgment interest at the rate set out in article 5069–1.05 on the basis of equity when damages could not be measured from the face of the contract); *Phillips Petroleum Co. v. Stahl Petroleum Co.,* 569 S.W.2d 480, 483–87 (Tex.1978) (awarding 6% interest under article 5069–1.01 and under common law principles of equity for withholding payments under royalty and purchase contracts). We note that the Legislature has addressed the question of prejudgment interest in article 5069–1.05(6) since our decisions in *Perry Roofing* and *Cavnar.* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 3, § 1, 1987 Tex. Gen. Laws 51, 51 (codified as an amendment to TEX.REV. CIV. STAT. art. 5069–1.05). That statute mandates prejudgment interest in wrongful death, personal injury, and property damage cases. TEX.REV.CIV. STAT. art. 5069–1.05(6); *see also Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 528 (Tex.1998). We recently aligned the rate of prejudgment interest and the date on which it commences to accrue under the common law in other cases with this statute. *Johnson & Higgins,* 962 S.W.2d at 529. However, in this case an award of equitable prejudgment interest would be directly at odds with another statute, TEX. NAT. RES.CODE § 91.402(b)(1). We have held that prejudgment interest is not recoverable in such circumstances. *See Standard Fire Ins. Co. v. Morgan,* 745 S.W.2d 310, 313 (Tex.1987) (holding prejudgment interest not recoverable on medical expenses under Workers' Compensation Act because the Act does not permit recovery of such interest); *see also Jones v. Liberty Mut. Ins. Co.,* 745 S.W.2d 901, 902–03 (Tex.1988) (holding that a work-

ers' compensation carrier suing for reimbursement of benefits paid was not entitled to prejudgment interest under *Cavnar* because the Workers' Compensation Act did not provide for interest). The Legislature has indicated very clearly in the Natural Resources Code that prejudgment interest is not due when disputes exist between a "payor" and a "payee" over oil and gas titles. TEX. NAT. RES.CODE § 91.403(b); *see also Hondo*, 970 F.2d at 1439 (holding that it would be contradictory to require an oil and gas operator to pay interest on payments withheld from another working interest owner when TEX. NAT. RES.CODE § 91.403(b)(2) did not require payment of interest). Accordingly, prejudgment interest is not recoverable in this case.

\* \* \* \* \*

For the foregoing reasons, we reverse the judgment of the court of appeals and render judgment in favor of Concord.

ENOCH, Justice, concurring.

I withdraw my opinion of February 26, 1998, and substitute the following in its place.

I joined the Court's original opinion in this case. On rehearing, it became evident to me that our original opinion, although scholarly,[1] went wide of the mark. The rehearing has produced a more accurately focused argument by the parties and consequently a better opinion from this Court. But the plurality insists on writing beyond the problem on points that seriously undermine its own position. Consequently, I can only concur in the Court's judgment, although I agree with the plurality on rehearing that we cannot reasonably interpret the deed in this case to convey two estates.

The original opinion from this Court was seriously flawed in two respects. First, the Court presupposed that the typical grantor does not intend to make two grants in one deed. *Concord Oil Co. v. Pennzoil Exploration*, 40 Tex. Sup.Ct. J. 33, 35, 1996 WL 596657 (Tex. 1996). Second, the Court anchored the opinion on a conclusion that the

Crosby deed's "subject to" clause included future leases. 40 Tex. Sup.Ct. J. 33, 38. Pennzoil, on rehearing, could not have been clearer in its attack on these flaws. Surprisingly, Concord, in response, made no effort at all to support the underpinnings of the Court's opinion. We granted the rehearing and further argument ensued.

Pennzoil rightly contends that whether "most grantors" intend to make two grants in one deed is an irrelevant inquiry unless the Court determines that the document, standing alone, contains internal inconsistencies. *See, e.g., Luckel v. White*, 819 S.W.2d 459, 462 (Tex.1991). We undermined our opinion by applying our presupposition that a typical grantor intends to convey only one estate before we concluded that the deed was internally inconsistent. Further, we were wrong to conclude that the "subject to" clause of the Crosby deed includes future leases. It does not—at least not clearly. And that is Pennzoil's second point. Reading the "subject to" clause to include future leases is not implausible, but it is unreasonable. The obligation of the Court is to construe the deed to *avoid* the disharmony, not *create* it. *Cf. National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex.1995). In short, we violated our own rules for construing writings. We read the "subject to" clause in a way that created a conflict within the document, rather than in a way that avoided the conflict.

Today, the plurality undermines its reasoning by continuing to rely on both the improper presupposition about a typical grantor's intent and the improper reading of the Crosby deed's "subject to" clause. Concord, by not arguing the point, implicitly concedes that both are flaws in the plurality's position. Were these the only bases supporting the Court's judgment, then the dissent's view should prevail and a different judgment should be rendered. But, there is one other, dispositive reason that dictates the actual judgment in this case. A point that destroys the reading the dissent attempts to give the

---

1. Patrick H. Martin, *Recent Developments in Nonregulatory Oil & Gas Law, in* OIL & GAS LAW & TAXATION § 1.02(2)(e), at 1–15 (1997).

Crosby deed. And a point the plurality merely adds to the Court's original opinion.

Were the Crosby deed to contain two conveyances rather than one, there would be an unavoidable conflict—a conflict that was, until now, overlooked by us. Even the parties failed to focus on it until oral argument on rehearing. The conflict would arise because, were the granting clause and the "subject to" clause conveying separate estates, they would convey more than Crosby owned. We need only focus on this fact. It is this fact alone that keeps me from joining the dissent, which is otherwise correct. There is nothing inherently wrong with a deed expressing two grants, and where expressed, such grants should be honored. However, the potential for over-grant in the Crosby deed prevents me from concluding that this deed contains two grants.

A proper review of the Crosby deed begins with the four-corners rule, under which we attempt to ascertain the intent of the parties from the language of the deed. See Luckel, 819 S.W.2d at 461. Our job is to harmonize all parts of the deed, if reasonably possible, even though the separate parts of the deed may appear to be contradictory or inconsistent. Cf. National Union, 907 S.W.2d at 520. Importantly, we are not to give the deed a reading that is unreasonable. Id.

We cannot give the Crosby deed the reading that the dissent believes is correct—that the deed makes two conveyances—because that reading is unreasonable. Assuming that the deed makes two conveyances, we would have the granting clause conveying a 1/96 mineral interest. But we would also have the "subject to" clause simultaneously conveying an additional 1/12 (or 8/96) interest in rentals and royalties under the then-current lease. This reading produces an over-grant.

At the time of Crosby's deed to his grantee, Southland, a mineral lease covered the property. The lessee held title to the mineral estate subject to the possibility that title would revert to Crosby and the other lessors in the future. Crosby, therefore, owned the possibility of a 1/12 mineral interest. Crosby's reverter interest *included* the right to royalties under the then-current lease, as do all reverter interests in the absence of language to the contrary. See Luckel, 819 S.W.2d at 464. Therefore, the Crosby deed's granting clause transferred to Southland 1/96 of Crosby's reverter interest, carrying with it a corresponding 1/96 share of the royalties due under the then-current lease. See id. If the "subject to" clause were a separate conveyance, it would transfer to Southland an additional 8/96 interest in the royalties due under the then-current lease. Under the dissent's construction, the granting clause and the "subject to" clause would convey 1/96 plus 8/96 for a total of 9/96 interest in the royalties, a larger interest than Crosby owned. This construction is not reasonable.

As Professor David Pierce has noted in looking at the court of appeals' opinion in this case, the dissent's two-grant conclusion makes sense only if one assumes that only one grant operates at a time. See David E. Pierce, *Developments in Nonregulatory Oil and Gas Law: The Continuing Search for Analytical Foundations*, in 47 OIL & GAS LAW & TAXATION § 1.05, at 1–24 (1996). That assumption, however, is contrary to the clear language of both the granting and "subject to" clauses.

Because reading the Crosby deed as making two conveyances creates an over-conveyance problem, we may not use that reading as a way of resolving the conflicting fractions in the Crosby deed. Therefore, we must see if there exists another reading that will resolve the conflict between the fractions.

As the plurality notes, the Crosby deed was written in the same year that this Court adopted the Texarkana court of appeals' opinion in *Tipps v. Bodine*, 101 S.W.2d 1076 (Tex.Civ.App.—Texarkana 1936, writ ref'd). *Tipps* blessed the use of differing fractions in granting and "subject to" clauses as the proper way to make a single conveyance when the conveyed interest is subject to an existing lease. See id. at 1079. Construing a deed with differing fractions used similarly to those in the Crosby deed, the *Tipps* court held that "we know of [no language] that would more clearly and accurately express the intention of the parties" to convey the single larger interest. Id. Simply, *Tipps*

supports construction of the Crosby deed to convey all of Crosby's 8/96 mineral interest.

I do not disagree with the content of the plurality's dissertation on policy and historical justifications, but the dissertation requires the practitioner to dig to find the nugget that resolves this case. Giving the Crosby deed a reasonable construction, I must conclude that the deed conveyed all of Crosby's 1/12 mineral interest. Therefore, I concur.

GONZALEZ, Justice, joined by SPECTOR, BAKER and HANKINSON, Justices, dissenting on motion for rehearing.

The dissenting opinion of October 18, 1996 is withdrawn and the following is substituted in its place.

We agree with both the trial court and the court of appeals that the deed in question unambiguously conveyed two estates of different sizes and duration: a 1/96 perpetual interest in the minerals, and a 1/12 interest in rentals and royalties which ended with the existing lease. Accordingly, we would affirm the judgment of the court of appeals.

I

The rules of construction that govern this type of dispute were most recently articulated in *Luckel v. White:*

> The construction of an unambiguous deed is a question of law for the court. The primary duty of a court when construing such a deed is to ascertain the intent of the parties from all of the language in the deed by a fundamental rule of construction known as the "four corners rule." That intention, when ascertained, prevails over arbitrary rules. The court, when seeking to ascertain the intention of the parties, attempts to harmonize all parts of the deed. The parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement. Even if different parts of the deed appear contradictory or inconsistent, the court must strive to harmonize all of the parts, construing the instrument to give effect to all of its provisions. The court should not strike down any part of the deed, unless there is an irreconcilable con-

flict wherein one part of the instrument destroys in effect another part thereof.

819 S.W.2d 459, 461–62 (Tex.1991) (citations and some punctuation omitted).

*Luckel* rejects mechanical rules of construction, such as giving priority to the granting clause over others, or requiring the use of magic words. Guided by *Luckel,* we conclude that the A.B. Crosby deed to Southland Leasing Co. (which the Court refers to as the "Concord deed") unambiguously makes two grants: (1) the granting clause conveyed a 1/96 perpetual mineral interest and the corresponding royalty; and (2) the subject-to clause conveyed a separate and additional 1/12 royalty estate from subsisting leases. The Court errs because it begins with a presumption that different fractions in different provisions necessarily conflict. If we can give the differing fractions meaning according to the plain language of the deed, then we must do so.

Understanding the deed as two separate grants, we need not apply rules of construction to rewrite one of the fractions, as the Court has done. Under well-settled case law, a grantor may convey a different interest in the leased minerals and in the existing royalty income by the same instrument. *See Luckel,* 819 S.W.2d at 463; *Woods v. Sims,* 154 Tex. 59, 273 S.W.2d 617, 621 (Tex.1954); *Benge v. Scharbauer,* 152 Tex. 447, 259 S.W.2d 166, 168 (Tex.1953); *Richardson v. Hart,* 143 Tex. 392, 185 S.W.2d 563, 564 (Tex.1945). Thus, the fact that the deed purports to grant two different fractional estates does not create a conflict.

Because we can give the deed's language its plain and ordinary meaning, we have no reason to resort to rules of construction. Rules of construction come into play only to resolve irreconcilable conflicts in multi-fraction deeds. *See Luckel,* 819 S.W.2d at 462. But because no clear conflict appears on the face of the Crosby–Southland deed, this approach is improper here. *See Jupiter Oil Co. v. Snow,* 819 S.W.2d 466, 469 (Tex.1991).

For this reason, the cases the Court cites involving conveyances with irreconcilable provisions do not apply here. *See, e.g., Luckel,* 819 S.W.2d at 463–64; *Jupiter,* 819

S.W.2d at 469; *Garrett v. Dils Co.*, 157 Tex. 92, 299 S.W.2d 904 (Tex.1957); *Tipps v. Bodine*, 101 S.W.2d 1076 (Tex.Civ.App.—Texarkana 1936, writ ref'd). These cases properly outline the rules for construing mineral deeds. These cases are distinguishable, however, because the deeds at issue in those cases each contained a future-lease clause.[1] In each there were multiple provisions consistent with each other but inconsistent with the granting clause. Here, no irreconcilable conflict appears on the face of the deed, in part because only two fractions must be reconciled.

The deed at issue in this case is more like the one in *Pan American Petroleum Corp. v. Texas Pacific Coal & Oil Co.*, 340 S.W.2d 548 (Tex.Civ.App.—El Paso 1960, writ ref'd n.r.e.). There, the granting clause conveyed an undivided 1/32 mineral interest, and the subject-to clause "cover[ed] and include[d] one fourth 1/4 of all of the oil royalty and gas royalty" in existing leases. *Pan American*, 340 S.W.2d at 556. Like the Crosby–Southland deed, the *Pan American* deed contained no future-lease clause. *See id.* at 557. The court held that the deed at issue conveyed two independent interests: (1) the granting clause conveyed 1/32 of all the minerals and the corresponding royalty interest; and (2) the subject-to clause conveyed a separate and additional royalty estate of 1/4 of the royalties allocated in existing leases. *Id.* The court declined to apply *Garrett v. Dils*—one of our early multi-fraction deed cases and a forerunner to *Luckel*—holding that the deed in *Garrett* was distinguishable. *Id.*

## II

The subject-to clause states that the conveyance was subject to "*any valid subsisting oil, gas and/or mineral lease or mineral lease or leases.*" The deed plainly limits the subject-to clause to existing leases, but the Court avoids this construction by interpreting the conclusion of the phrase "or mineral lease or leases" to mean future leases. It is unlikely that after carefully limiting the subject-to clause to existing leases, Crosby

meant "or mineral lease or leases" to include an entirely different interest—future leases. "Valid subsisting" is a compound adjective that modifies everything afterward. What follows is a list of each type of lease that could have existed when Crosby made the grant. The list is connected by commas and conjunctions, consistent with other serial lists. Under this construction, the deed is subject to:

- An oil, gas, and mineral lease
- An oil and gas lease
- A mineral lease
- A mineral lease or leases

The phrase "or mineral lease or leases" is broad enough to cover any combination of these lease types or to serve as the plural form of any single type of lease. It is best understood as lawyerly writing bordering on the redundant, such as "grant, sell, and convey" or "right, title, and interest."

Ignoring the subject-to clause's serial nature, the Court takes the phrase "or mineral lease or leases" out of context and concludes that Crosby really intended to convey a 1/12 royalty interest under both the existing lease and all future leases. However, we may not isolate this phrase and read it as an independent clause. We have never before read a future-lease clause into a mineral deed when the parties did not clearly express their intent about future events. *See, e.g., Jupiter Oil Co. v. Snow*, 819 S.W.2d 466, 468 (Tex. 1991) (describing grantee's mineral interest "[i]n the event the lease now on said land is forfeited or terminated"); *Luckel v. White*, 819 S.W.2d 459, 461 (Tex.1991) (stating that grantor reserved "the right upon expiration of the present term of the lease on said premises to make other additional leases" and that grantee would receive 1/4 of any future lease royalties); *Garrett v. Dils Co.*, 157 Tex. 92, 299 S.W.2d 904, 906 (Tex.1957) (specifying that grantee would receive 1/8 of future lease benefits "in the event the then existing lease should terminate"); *Tipps v. Bodine*, 101 S.W.2d 1076, 1077 (Tex.Civ.

---

1. As the Court acknowledges, "The Concord deed does not give as much guidance as the conveyances considered by this Court in other cases." 966 S.W.2d at 457. The Court again observes that the Concord deed "is not as explicit as the deeds in *Luckel, Jupiter Oil, Garrett,* or *Tipps.*" 966 S.W.2d at 458.

App.—Texarkana 1936, writ ref'd) (providing that, "in the event that the above described lease for any reason becomes canceled or forfeited," grantee would receive *"One–Half* of the lease interests and all future rentals on said land" (emphasis in original)). Unlike these deeds, the Crosby–Southland deed did not specify that Southland would hold an interest when the existing lease terminated. Thus, Crosby retained a possibility of reverter in future lease benefits that vested when the existing lease expired. The Court's construction ignores the word "subsisting," which unlike "or mineral lease or leases" has substantive meaning.

The Court and Justice Enoch contend that the lease may not be enforced as written because the granting clause includes within the "bundle of sticks" a royalty interest *which must be added* to the interest in existing leases conveyed in the subject-to clause. They assert that when the implied royalty interest of the granting clause is added to the express conveyance of the royalty interest in existing leases, it results in an interest larger than Crosby owned. The Court and Justice Enoch over-complicate the deed's plain language to create a false conflict. The deed says "subject to," not "added to." A far simpler interpretation is that Crosby intended to convey to Southland a 1/96 interest in all of his rights, except for the rentals and royalties in subsisting leases, of which he conveyed a 1/12 interest. The net effect is that Crosby conveyed to Southland all of his royalty interest from existing leases, being 1/12, and a 1/96 interest in the possibility of reverter; Crosby retained the other 7/96 interest in the possibility of reverter. The right to royalty from subsisting leases and the possibility of reverter are two different interests which should not be added together. Under this interpretation, Crosby conveyed all of his right to royalty in subsisting leases and less than his interest in the possibility of reverter; it does not require us to assume that Crosby meant to convey 1/12 when he wrote 1/96.

In sum, the only way to justify the harmonizing approach is to create a conflict between the fractions where none exists. Even then, the Court assumes that the grantor intended to convey something other than what appears on the face of the deed, thereby violating the four-corners rule. This Court cannot substitute what it thinks the grantor really meant for the unambiguous grant of a 1/96 mineral interest and an additional 1/12 royalty from existing leases. *See Luckel*, 819 S.W.2d at 463. Nevertheless, the Court interpolates a future-lease clause into the deed and holds that 1/96 really means 1/12. The Court's opinion promotes ad-hoc analysis of every mineral deed and wreaks havoc on title stability. For these reasons, we would affirm the court of appeals' judgment.