

**NUMBER 13-09-184-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

YOLANDA HERNANDEZ, INDIVIDUALLY
AND ON BEHALF OF THE ESTATE OF
PEDRO FLORES, ET AL.,                                      Appellants,

**v.**

EL PASO PRODUCTION COMPANY N/K/A
EL PASO E&P COMPANY, L.P.,                                      Appellee.

**On appeal from the 139th District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Vela
Memorandum Opinion by Justice Vela**

This appeal is from a trial court order granting summary judgment for appellee, El

Paso Production Company n/k/a El Paso E&P Company, L.P., and against appellants,

Yolanda Hernandez, individually and on behalf of the Estate of Pedro Flores, Juan Flores,

Sigifredo Flores, Desiderio Flores and David Flores (collectively, "the Hernandezes"), in a suit brought to quiet title with respect to a mineral estate. The Hernandezes urge that the trial court erred by: (1) construing the deed at issue to convey more than a one-sixteenth mineral interest in the subject property, (2) construing the deed at issue based on the "estate misconception" theory, (3) granting El Paso's motion for summary judgment based on subsequent extrinsic evidence, (4) granting El Paso's summary judgment motion based on a title opinion, (5) granting summary judgment that the Hernandezes take nothing on their trespass cause of action; and (6) denying their motion for partial summary judgment because they are the title owners to a seven-sixteenth interest in the mineral estate in and under the property at issue. The Hernandezes also argue that there was an issue of fact precluding summary judgment on the claim of surface damage and that the award of attorney's fees was improper. We affirm, in part, and reverse and remand, in part.

## I. PROCEDURAL BACKGROUND

The Hernandezes filed suit to quiet title asserting, at the time the pleadings initially were filed, that they "are the owners of the surface and one-half of the mineral estate of a certain tract of land located in Hidalgo and Starr Counties, Texas. . . ." In their second amended pleadings, the Hernandezes allege that they owned "at least 1/2 of the mineral estate." But, in their fourth amended petition they claim they own 7/8 of the mineral interests. The Hernandezes also added causes of action for breach of fiduciary duty, fraud, constructive fraud, breach of the duty of good faith and fair dealing, conversion, negligence, gross negligence, trespass, and damage to the surface estate. El Paso filed

2

a plea in abatement and answered the lawsuit. Later, J.F. Ewers, Jr., J.F. Ewers, III., Michelle Craig, David A. Ewers, Alan D. Ewers, and William B. Ewers, (collectively, the "Ewers") filed a plea in intervention, alleging that they own mineral interests in the tract of property set forth in the Hernandezes' petition. The Hernandezes counterclaimed to quiet title and sought a declaration that they were the owners of the surface and mineral interests.

The Hernandezes sought summary judgment on the title claim. Thereafter, El Paso also sought summary judgment, alleging that the Hernandezes had no interest in the mineral estate and El Paso moved for summary judgment on the remaining claims. El Paso filed a no-evidence motion for summary judgment on most of the remaining claims. The trial court's order granted El Paso's no-evidence and traditional motions and awarded it attorney's fees pursuant to chapter 37 of the Texas Civil Practice & Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 2008).

This Court abated the case on October 20, 2010 to clarify whether the trial court intended to dispose of all parties and claims on its judgment of January 16, 2008. The Court noted that the intervention and counterclaim were not specifically disposed of in the judgment. The judgment is entitled "Final Judgment" and orders that the Hernandezes take nothing by their suit. Upon remand, the trial court issued an order stating that it intended the judgment to be final because the intervention and counterclaim were made moot by the order granting summary judgment. After reviewing the motion for summary judgment and pleadings, we agree that the trial court's order of January 16, 2008 made the intervention and counterclaim moot and is final.

3

## II. THE MINERAL INTERESTS

The parties in this case primarily dispute the interpretation of a mineral deed that was recorded in 1932 from Romulo Salinas and his wife, Nicanora Rodriguez, ("Salinas") to C. J. Bolleter (the "Bolleter deed"). The parties agree that the Bolleter deed is unambiguous, but urge alternate interpretations. The Hernandezes claim that the deed conveyed a one-sixteenth mineral interest to Bolleter and that the Hernandezes, as the heirs of Salinas, own an undivided seven-sixteenth's of the mineral interest in and under the subject property. El Paso was the assignee of mineral interests in the subject land. It claims that Romulo and Nicanora Salinas conveyed all of their mineral interest in the subject land during their lifetime and, while the Hernandezes own the surface estate, they do not own any of the mineral interests. The original deed, which is the source of the controversy, granted a:

> One sixteenth interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described lands situated in Hidalgo County, Texas. . . .

> And said above described lands being now under an oil and gas lease originally executed in favor of La Joya Oil and Gas Co. and now held by La Joya Oil and Gas Co., it is understood and agreed that this sale is made subject to said lease, but covers and includes one half (1/2) of all the oil royalty and gas rental or royalty due and to be paid under the term of said lease.

> It is agreed and understood that None of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said C. J. Bolleter, and in the event that the said above described lease for any reason becomes cancelled or forfeited, then and in that event, the lease interests and all future rentals on said land, for oil, gas and mineral privileges shall be owned jointly by C. J. Bolleter and Grantors herein,

4

> Romulo Salinas & Nicanor (sic) Rodriguez each owning one half 1/2 of Royalty same being 1/2 of 1/8 or 1/16 interest in all oil, gas and other minerals in and upon said land under the present lease or any future lease on said land together with 1/2 one half interest in all future rents.

There are also additional deeds and information in the chain of title that are necessary to discuss in our disposition of this case. One deed, dated May 26, 1932, from C. J. Bolleter et. ux. to J. E. Wilkins, conveyed 1/4 of his mineral interest in the subject land to Wilkins. Another, dated September 17, 1932, conveyed a 1/4 interest from C. J. Bolleter and Annie C. Bolleter to Theresa C. Gallucci. A third deed, dated March 10, 1934, conveyed an undivided 1/2 mineral interest in the subject land to R. H. Woods.

In 1934, Romulo and Nicanora Salinas executed an affidavit averring that they had conveyed, sold, assigned or transferred:

> all their right, title and interest in an to all minerals. . ., and all rights accruing by virtue thereof on top and underneath the surface of the hereinafter described property, one-half of such mineral rights being sold to R. H. Woods, for a valuable consideration, of Hidalgo County, Texas; and one-fourth to Ed Wilkins, of Hidalgo County, Texas; and one-fourth to Theresa Galluci, of Hidalgo County, Texas. . . .

In 2001, an oil, gas and mineral lease from Pedro Flores to Thorp Petroleum Corporation was recorded purporting to cover mineral interests with respect to the same land. Flores and his estate acquired his interest in the land from the heirs of Romulo and Nicanora Salinas by warranty deed dated January 22, 1953.

### III.  STANDARD OF REVIEW

Whether the motion for summary judgment was brought pursuant to no-evidence or traditional grounds determines our standard of review. *See* TEX. R. CIV.

5

P. 166a(c), (i); *see also Ortega v. City Nat'l Bank,* 97 S.W.3d 765, 771 (Tex. App.–Corpus Christi 2003, no pet.). A no-evidence summary judgment equates to a pre-trial directed verdict. *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex. 2006); *Ortega,* 97 S.W.3d at 772. We review the evidence presented by the motion and the response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to a party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks Inc.*, 206 S.W.3d at 582. We utilize a de novo standard in reviewing the trial court's granting of a traditional motion for summary judgment. *See Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood,* 100 S.W.3d 645, 646 (Tex. App.–Corpus Christi 2003, no pet.). We must determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex. 1979). In a traditional summary judgment, the movant bears the burden of proof, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *See Sw. Elec. Power Co.,* 73 S.W.3d at 215. We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *See Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005).

We affirm a traditional summary judgment only if the record establishes that the movant has negated at least one essential element of the plaintiff's causes of action or has conclusively proved its defense as a matter of law. *IHS Cedars Treatment Ctr. of*

6

*DeSoto, Tex., Inc. v. Mason,* 143 S.W.3d 794, 798 (Tex. 2004); *see Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex. 1997); *Clear Creek Basin Auth.,* 589 S.W.2d at 678. When reasonable people could not differ as to the conclusion to be drawn from the evidence, the matter is conclusively established. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Once the movant has produced sufficient evidence to establish its right to summary judgment, the burden to produce competent controverting evidence raising a fact issue with regard to the challenged element shifts to the non-movant. *Rhone-Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex. 1999); *see Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex. 1995). When the trial court's judgment does not specify which of several proposed grounds was dispositive, we affirm on any ground offered that has merit and was preserved for review. *See Joe v. Two Thirty Nine J.V.,* 145 S.W.3d 150, 157 (Tex. 2004).

## IV. ANALYSIS

We first address the Hernandezes' issue that the trial court erred in granting summary judgment because the trial court erred in construing the Bolleter Deed to convey more than a one-sixteenth mineral interest. The Hernandezes primarily argue that the only applicable clause we should consider is the granting clause. El Paso argues that we need to harmonize the language in the entire deed. We agree that the law clearly requires us to go beyond the granting clause in our review and we must examine all three clauses of the deed.

In construing the meaning of a deed, our duty is to ascertain the intent of the parties as set forth within the four corners of the document. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). The court, in *Luckel*, rejected the notion that the granting clause

7

prevails. *Id.* at 461. We examine the entire writing in an effort to harmonize and effectuate all provisions in the agreement, even if different parts appear inconsistent or contradictory. *Id.* at 462. Each word and phrase should be given its plain, grammatical meaning unless doing so would defeat the parties' intent. *Moon Royalty, LLC v. Boldrick Partners*, 244 S.W.3d 391, 394 (Tex. App.–Eastland 2007, no pet.). A deed may be either ambiguous or unambiguous; such determination is a question of law. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996). Neither party here claims that the deed at issue is ambiguous.

The deed at issue in this case has different fractions appearing within the same instrument. This common occurrence in older oil and gas deeds has been a source of problems over the years. *See Concord Oil Co. v. Pennzoil Exploration & Prod. Co.*, 966 S.W.2d 451, 452 (Tex. 1998). The form of the deed at issue here was a three-paragraph deed, apparently commonly used in the 1930s, that included: (1) a "granting" clause; (2) a "subject to" clause; and (3) a "future lease" clause. *See* Richard F. Brown, *Oil, Gas and Mineral Law*, 60 SMU L. REV. 1189, 1191 (2007). In the 1930s, when the "three grant" clauses were commonly used, "royalties were almost always one-eighth, and it would be a very unusual and very creative grantor who actually intended two separate grants of differing interest." *See id.* at 1194. The granting clause is similar to other real property conveyances; the subject-to clause explains that the conveyance is subject to an existing lease; and the future lease clause provides for ownership rights after the existing lease expires. Laura H. Burney*, The Regrettable Rebirth of the Two-Grant Doctrine in Texas Deed Construction,* 34 S. TEX. L. REV. 73, 86 (1993). This deed form was developed to make a single conveyance of a fractional mineral interest and appurtenant

8

rights. *Id.* According to Burney, most leases provided for a 1/8 royalty, but drafters incorrectly perceived the estate to be a fee simple determinable with 7/8 of the mineral interest lying with the lessee. *Id.* at 88. "Although the lessor only retains a 1/8 royalty interest, the lessor still has the possibility of a reverter in the entire mineral estate." *Id.* "For example, a lessor who has leased the entire mineral estate, but desires to lease-one half of the minerals, would assume that he owned 1/8 of the minerals due to the existing lease. Therefore, the lessor would use the fraction 1/16, or a double fraction, 1/2 of 1/8, to convey 1/2 of what he perceived he owned." *Id.* at 89. The Texas Supreme Court has taken judicial notice that the "prevailing royalty in private oil and gas leases in the 1930s was a 1/8 royalty." *Concord*, 966 S.W.2d at 459-60.

In their text on Texas oil and gas law, Ernest E. Smith and Jacqueline Lane Weaver explain these types of 1930s deeds, stating: "a person purchasing an undivided 1/2 interest in lessor's land should receive a deed conveying 1/16 of the oil and gas beneath the tract but covering and including 1/2 of all rents and royalties payable under the outstanding oil and gas lease to which the grant was made subject." Ernest E. Smith & Jacqueline Lane Weaver, *Texas Law of Oil and Gas*, § 3.8 A.2 (2d edition Rev. 2007).

In *Concord Oil*, the Texas Supreme Court considered a deed similar to the one at issue in this case, with differing fractions in the various clauses of the deed. 966 S.W.2d at 453. The court reaffirmed that the primary objective in construing mineral deeds was to determine the intent of the parties. *Id.* at 454. The court noted that when it had considered cases in the past with inconsistencies between the fraction in the granting clause and those in other clauses, it was evident that the grantor had conveyed a larger

9

interest than the granting clause indicated. *Id*. at 455. The court noted that in *Tipps v. Bodine*, 101 S.W.2d 1076 (Tex. App.–Texarkana 1937, writ ref'd), the granting clause granted a 1/16 interest in the minerals. Yet, the other clauses effectively conveyed a larger fraction. *Id.* The *Tipps* court held that the conveyance was actually a 1/2 interest in the minerals even though the granting clause contained the fraction "1/16." *Id*. The *Concord* court also noted that the facts in *Garrett v. Dils Co.,* 299 S.W.2d 904 (Tex. 1957), were similar to *Tipps* and resulted in a 1/8 interest in the minerals, rather than a 1/64 interest, as stated in the granting clause. *Id.*

Here, the Hernandezes want us to rely upon only the granting clause, granting "One sixteenth interest in and to all of the oil, gas and other minerals." But, the law requires us to look at all three clauses to reach the correct interpretation. *Luckel*, 819 S.W.2d at 461. The deed at issue here provides guidance as to what the parties intended. While the granting clause grants a 1/16 interest in the minerals, the "subject to" clause covers and includes one half (1/2) of all the oil royalty and gas rental or royalty due and to be paid under the term of said lease. The "subject to" clause shows the intent to convey a full 1/2 of all royalty and gas rental due under the terms of the lease. This indicates that the grantors understood that a 1/8 royalty was what they owned and they were giving 1/2 of that to the grantees.

It is also clear that the future lease clause under the Bolleter deed provided that the oil, gas and mineral privileges would be owned by the grantors, Romulo Salinas and Nicanora Rodriguez Salinas, as well as Bolleter. The future lease provision expresses the parties' intent that they jointly own the minerals, 1/2 each. And the language in the

10

future lease provision describing "1/2 of 1/8 or 1/16" further confirms that the grantors thought that the 1/8 royalty interest was all that they owned. Thus, by granting a 1/16th interest, the grantors were conveying 1/2 of what they owned on the existing as well as any potential future leases.

By construing the deed pursuant to the rules relevant to the construction of these types of deeds, as outlined by the Texas Supreme Court, we conclude that the Salinases conveyed 1/2 of their interest through the Bolleter deed. The parties agree and concede that Salinas and Rodriguez conveyed a 1/2 mineral interest to Woods two years later. Salinas then had no mineral interest remaining when the heirs executed the deed to Pedro Flores in 1953. Thus, the 1953 conveyance included only surface interest. Therefore, we hold that Salinas and Rodriguez had previously conveyed all of their mineral interests before they executed the deed to Pedro Flores in 1953. We overrule issue one.

By issue two, the Hernandezes argue that we should construe the document against the scrivener because Romulo Salinas and Nicanora Rodriguez were unable to sign their names to the deed and signed with an "X." We first note that we have no idea who the scrivener of the deed was. Deeds are usually prepared by the grantor or by a scrivener or under his direction. *McMahon v. Christmann*, 303 S.W.2d 341,346 (Tex. 1957). In this case, the grantors were Romulo Salinas and his wife, Nicanora Rodriguez De Salinas. And we also note that only Nicanora R. De Salinas signed with an "X." Her husband did not. Further, we will not apply this secondary canon of construction to this deed because we have not found the deed ambiguous. We look within the four corners of the deed. We overrule issue two.

11

The Hernandezes argue by their third issue that the summary judgment should be reversed because the trial court considered extrinsic evidence in interpreting the Bolleter Deed. An appellate court presumes that, in a matter tried without a jury, a trial court disregards any incompetent evidence and considers only competent evidence. *Garza v. Prolithic Energy Co. L.P.*, 195 S.W.3d 137, 147 (Tex. App.–San Antonio, pet. denied). Further, some of the evidence that the Hernandezes suggest was extrinsic was ultimately necessary for the trial court to conclude whether any interest in the minerals remained. For instance, at various points, the Hernandezes claimed that they owned between 1/2 and 7/8 of the minerals in and under the subject land. Thus, in order to obtain summary judgment on its claim that the Hernandezes owned nothing, it was necessary for El Paso to introduce evidence in the chain of title to establish that the Salinases did not retain any mineral interest at the time the surface was conveyed to the Pedro Flores. This evidence was outside the Bolleter deed. For both reasons, we overrule issue three.

By issue four, the Hernandezes argue that the trial court erred in granting summary judgment in favor of El Paso based on the expert opinion of Lee S. Gill. Gill's title opinions were included as summary judgment evidence with respect to El Paso's traditional motion for summary judgment. A title opinion, issued in 2002, concluded that Flores acquired his interest in the land from the heirs of Romulo and Nicanora Salinas. Gill opined that Romulo and Nicanora Salinas sold all of their mineral interest in the subject land during their lifetime. Thus, the opinion suggests that Pedro Flores could not have acquired a mineral interest in the land from the Salinas heirs. The Hernandezes argue that expert testimony regarding the construction of an unambiguous deed is a pure question of law for the court and the experts are not permitted to testify regarding their

12

opinions as to pure questions of law. *See Upjohn Co. v. Rylander*, 38 S.W.3d 600, 611 (Tex. App.–Austin 2000, pet. denied). As previously stated, we presume in a matter tried without a jury, a trial court disregards any incompetent evidence and considers only competent evidence. *Garza v. Prolithic Energy Co. L.P.*, 195 S.W.3d at 147. To reverse a judgment for error in either the admission or exclusion of evidence, a party must show that the error probably resulted in an improper judgment. TEX. R. APP. P. 44.1. We do not know if the trial court considered the Gill affidavit or not in granting summary judgment in favor of El Paso. We will presume, without deciding the issue of whether the Hernandezes objections were properly overruled, that the trial court considered only admissible evidence. We overrule issue four.

The Hernandezes argue in issue five that they have shown that the Bolleter deed is unambiguous, but if we determined that there was an ambiguity then there is a fact issue for the jury. We agree with both parties that the Bolleter deed is not ambiguous. Therefore, we overrule issue five.

By their sixth issue, the Hernandezes claim that El Paso failed to meet its burden as there is a genuine issue of material fact regarding their claims pertaining to damage to the surface estate. In their pleadings, the Hernandezes alleged that El Paso had trespassed on the surface of the property and had committed waste and surface damage, entitling them to damages. In our review of El Paso's no-evidence motion for summary judgment, it does not appear that El Paso moved for a no–evidence motion for summary judgment with respect to damages to the surface estate. Therefore, we look only to the traditional motion for summary judgment, the evidence supporting it and any controverting evidence filed by the Hernandezes to determine whether El Paso has

13

proven its right to summary judgment as a matter of law with respect to the claim of trespass and damage to the surface estate.

El Paso contends that when the mineral leases were assigned to it, the conveyance was separate from the surface land. According to El Paso, the mineral leases gave El Paso the dominant estate, providing it the right to use as much of the premises and in a manner reasonably necessary to effectuate the purpose of the lease. Additionally, El Paso argues that the Hernandezes signed surface damage waivers, expressly allowing for the use of the surface.

As proof, El Paso submitted the affidavit of James F. Cohn. The Hernandezes objected to his affidavit as conclusory. Cohn averred that he observed the surface based on visits to the location and saw no instances where ordinary care had not been used. He said that there had been no use of the surface beyond that which was reasonable and necessary to operate the three wells that were being operated on the property. He stated that the property had been improved by the installation of a road providing access to the property. The record also contains three surface use settlement agreements where, in consideration of $6,000, the Hernandezes released El Paso from all claims of loss, damage, or injury to the property arising out of the installation, operation or removal of all facilities related to the principal facility. The waiver did not, however, apply to future loss caused by negligence or willful misconduct.

The Hernandezes point to the affidavit of Yolanda Hernandez as controverting evidence that would create a fact issue. Moreover, they argue that El Paso has not established its right to summary judgment as a matter of law because the Cohn affidavit is conclusory and the releases expressly disclaim "coverage of future negligence."

14

Summary judgment based on the uncontroverted affidavit of an interested witness is proper if the evidence is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies and could have been readily controverted. TEX. R. CIV. P. 166a(c). The mere fact that an affidavit is self serving does not necessarily make it improper summary judgment evidence. *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997).

Here, Cohn was on site and testified that he observed no use upon the property that was unreasonable or unnecessary. Yolanda Hernandez however, filed an affidavit and attached a letter from Cohn to her father as controverting evidence. In her affidavit, she avers that Cohn's factual representation is untrue and conflicts with a letter he had previously written to her father wherein he discusses "the damages associated with the recent installation of a gas lift pipeline" and El Paso offered to pay "$1.00 per linear foot for that section of pipe between pads for a total settlement of $1,414.00." The Hernandezes's affidavit explains that they did not accept El Paso's offer.

El Paso argues in its brief that the letter does not describe any negligent act and that the installation of gas pipeline is within the scope of surface use agreements and consideration was already paid for all such facilities. El Paso also argues that the surface lease agreements unambiguously cover all activities from installation to abandonment. However, the summary judgment evidence presented by the Hernandezes does indicate that El Paso was willing to pay some amount beyond what the surface agreement allowed. The requisites to prove negligence of a mineral lessee are the same as for any other tortfeasor. *See* Keeton & Jones, *Tort Liability and the Oil and Gas Industry*, 35 TEXAS L. REV. 1, 12 (1956). But it was El Paso's burden, as the

15

movant, to establish as a matter of law that it was not negligent with respect to damages to the surface estate. Regardless of whether or not Cohn's affidavit was clear, positive and direct, the Hernandezes's summary judgment evidence raised a fact issue with respect to the surface damage claim. We sustain issue six.

By appellant's seventh issue, the Hernandezes argue that the trial court erred in awarding attorney's fees. El Paso urges it is entitled to attorney's fees pursuant to section 37.009 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. The Hernandezes contend that title disputes are governed by chapter 22 of the property code and attorney's fees are not available. *See EOG Res. v. Killam Oil Co.*, 239 S.W.3d 293, 304 (Tex. App.–San Antonio 2007, pet. denied). Because we are reversing and remanding a portion of the case for a factual determination, we likewise reverse and remand to the trial court to reconsider what award, if any, is appropriate. *See Neely v. West Orange-Cove Consol. Ind. School Dist.*, 176 S.W.3d 746, 799 (Tex. 2005). The Hernandezes' seventh issue is sustained.

## V. CONCLUSION

We affirm the trial court's judgment that the Hernandezes own no right to the mineral interests at issue; and the trial court correctly granted summary judgment on this ground. We reverse and remand the grant of summary judgment with respect to the surface damage claim and the award of attorney's fees.


ROSE VELA
Justice

Delivered and filed the
14th day of April, 2011.

16