COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| SCOTT W. JOHNSON and FLORENCE H. CUMMINGS, | § | |
| | § | |
| Appellants/ Cross-Appellees, | § | |
| | § | |
| v. | § | No. 08-22-00132-CV |
| | § | |
| CALE ANDREW CLIFTON, CHRISTOPHER MATTHEW CLIFTON, | § | Appeal from the |
| PAMELA PARKER CLIFTON, COG OPERATING, LLC, DESERT | § | 143rd Judicial District Court |
| PARTNERS IV, LP, KELLI CLIFTON GOSSMANN, LAMBERT LAND CO., | § | of Reeves County, Texas |
| LLC, KMF LAND, LLC, McCAMEY FARM & RANCH, L.P., KATHY | § | (TC# 20-07-23609-CVR) |
| PARKER in her Capacity as Independent Executor of the Estate of J. LOYD | § | |
| PARKER, III, SPRINGWOOD MINERAL 4, LP, ROBBIN LEE | § | |
| YOUNG, YOUNG OIL AND GAS, LP and LAKE RANCH, LP, | § | |
| | § | |
| Appellees/Cross-Appellants.[1] | § | |

## MEMORANDUM OPINION

This is an appeal from an order granting summary judgment in favor of the Appellees in which the trial court interpreted a 1951 deed as conveying a fixed 1/128th royalty interest to the grantees. Appellants, who are successors-in-interest to the grantees, contend that the trial court

---

[1] As explained below, only certain Appellees are also Cross-Appellants.

erred and should have instead interpreted the deed to convey a floating 1/16th royalty interest to the grantees. On cross-appeal, certain Appellees contend that the trial court correctly interpreted the deed, while others contend that the deed conveyed a 1/128th mineral interest, with a corresponding 1/128th floating royalty interest. For the reasons set forth below, we reverse the trial court's order and render judgment that the deed conveyed a non-participating 1/16th mineral interest with a corresponding floating 1/16th royalty interest.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The deed and subsequent conveyances

In 1951, J. B. Young, Elizabeth Cornell, and H. D. Cornell (collectively Grantors) conveyed by deed an interest in a plot of land comprising several thousand acres in Reeves County, Texas to W. H. Holcombe and J. Marvin Rape (collectively Grantees). The deed, which we refer to as the Cornell Deed or the Deed, reads in pertinent part:

> [Grantors] Grant, Sell and Convey, unto [Grantees], an undivided one-one hundred and twenty-eighth (1/128) interest in and to all of the oil, gas and other minerals in and under the following described tracts of land . . . .
>
> It is understood and herein stipulated that said land is under oil and gas leases providing for a royalty of 1/8 of the oil and certain royalties or rentals for gas and other minerals and that Grantees herein shall receive one-sixteenth (1/16) of the royalties provided for in said lease insofar as the same cover the above described land, but Grantees shall have no interest in or be entitled to nor be entitled to receive any part of any rentals paid under said leases, nor shall the Grantees have any interest in any bonus money received by Grantors, their heirs or assigns, in any future lease or leases given on said land or any part thereof, and it shall not be necessary for the Grantees to join in any such subsequent lease or leases so made; that Grantees shall only receive under such subsequent lease or leases a 1/128 (1/16 of the usual 1/8 royalty) part of all of the oil, gas, and other minerals taken and saved under such lease or leases and Grantees shall receive same out of the royalty provided for in such lease or leases.
>
> TO HAVE AND TO HOLD the same unto the said Grantees, their heirs and assigns forever, and Grantors hereby bind themselves, their heirs, assigns, executors and administrators, to warrant and forever defend all and singular the said royalty interest herein conveyed unto the said Grantees, their heirs and assigns,

2

against every person whomsoever lawfully claiming, or to claim the same or any part thereof . . . . This, the 7th day of May A.D. 1951.

The Cornell Deed has the typed words "Mineral Deed" crossed out but with a question mark next to it. The words, "Royalty Deed" is handwritten at the top.

As set forth in the Cornell Deed, at the time of the conveyance, the subject land was under oil and gas leases that provided for a 1/8th royalty. However, the land is currently under several leases, some of which provide for royalties of 25% while others provide for royalties of 22.5%. It is undisputed that since the conveyance, the Grantees and their successors have been paid a fixed royalty interest of 1/128th in the production of all oil, gas, and minerals produced from the subject land, and the Grantors and their successors have been paid the remainder.

Appellants Scott Johnson and Florence Cummings are successors of the Grantees, with each owning a 1/5th interest in the conveyance. Cummings obtained her interest in December of 2011, while Johnson obtained his interest in June of 2020. Appellees are all successors of the Grantors.

**B.    Johnson and Cummings's lawsuit and their motion for partial summary judgment**

In July of 2020, Johnson and Cummings filed the present lawsuit naming all of the Appellees as defendants, seeking a declaratory judgment that the Cornell Deed conveyed a non-participating floating 1/16th royalty interest, instead of a fixed 1/128th royalty interest. They also asserted claims for breach of contract, trespass to try title, monies had and received, and unjust enrichment, claiming that Appellees had been wrongfully "accepting payment of the disputed royalty" and had been unjustly enriched thereby.

Following a limited amount of discovery, Johnson and Cummings filed a traditional motion for partial summary judgment seeking a ruling on their claim for declaratory judgment that the

Cornell Deed conveyed a floating 1/16th royalty interest. They further sought a trial on the issue of their damages, costs, and attorney's fees. Because the Appellees filed varying responses to the lawsuit and to Johnson and Cummings's motion for summary judgment, we categorize them into the following four groups.

### C. The COG Defendants' position

The COG Defendants include Appellees COG Operating, LLC (COG), Lambert Land Co., LLC (Lambert), and KMF Land, LLC (KMF). In response to Johnson and Cummings's lawsuit, COG filed a general denial and pled the affirmative defense that Johnson and Cummings's claims were barred by the statute of limitations. Lambert and KMF subsequently joined in COG'S response.

COG thereafter filed a traditional motion for summary judgment, seeking a judgment that Johnson and Cummings take nothing on their claims and that the trial court declare that the Cornell Deed conveyed a fixed 1/128th royalty interest to the Grantees on all past and future leases. Lambert and KMF joined in this motion.

### D. The Clifton-Parker Defendants' position

The Clifton-Parker Defendants include Appellees Cale Andrew Clifton, Pamela Parker Clifton, Kelli Clifton Gossmann, and Kathy Parker in her Capacity as Independent Executor of the Estate of J. Loyd Parker, III, Deceased. The Clifton-Parker Defendants filed a joint pleading in response to Johnson and Cummings's lawsuit, denying all of their claims and asserting several affirmative defenses, including statute of limitations, waiver, estoppel, and payment.

The Clifton-Parker Defendants also filed a traditional motion for summary judgment, seeking a judgment that Johnson and Cummings take nothing on their claims and a ruling that the Cornell Deed conveyed a fixed 1/128th royalty interest to the Grantees.

### E.   The Clifton-McCamey Farm Defendants/Counter-Plaintiffs

The Clifton-McCamey Farm Defendants include Appellees Christopher Matthew Clifton, McCamey Farm & Ranch, L.P., Robbin Lee Young, Young Oil and Gas, LP, and Lake Ranch LP. The Clifton-McCamey Defendants filed a joint general denial to Johnson and Cummings's lawsuit, requesting that the court enter a take-nothing judgment on their claims and raising various affirmative defenses, including statute of limitations, laches, waiver, estoppel release and/or payment. They also filed a counterclaim, bringing a claim for trespass to try title against Johnson and Cummings and seeking a declaratory judgment that the Cornell Deed conveyed a floating 1/128th royalty to the Grantees.

The Clifton-McCamey Farm Defendants filed a traditional motion for partial summary judgment, seeking a declaration that the Cornell Deed conveyed a non-participating mineral interest of 1/128th and a corresponding floating 1/128th royalty interest in the 1951 leases as well as all future leases. They requested that the remainder of their claims proceed to trial on damages, costs, and attorney's fees.

### F.   The Desert Partners Defendants

Appellees Desert Partners IV, LP and Springwood Mineral 4, LP filed separate general denials to Johnson and Cummings's lawsuit. Thereafter, they filed a joint traditional motion for summary judgment, seeking a declaration that the Cornell Deed conveyed a "1/128th mineral interest with a fixed 1/128th royalty for future leases." Alternatively, they argued that if the court concluded the Cornell Deed conveyed a non-participating royalty interest rather than a mineral interest, then the court should conclude that it conveyed a fixed 1/128th royalty interest in all future leases.

### G. The trial court's rulings

After the various parties responded to the pending motions, the trial court first issued its ruling denying Johnson and Cummings's motion for partial summary judgment. The trial court then issued an order purporting to grant all of the pending summary judgment motions filed by the defendants, ruling: (1) the Cornell Deed conveyed a fixed 1/128th royalty interest to the Grantees; and (2) Johnson and Cummings take nothing on their claims.[2] The order further stated all other relief requested but not expressly granted was denied, and it finally disposed of all parties and claims, making it a final, appealable judgment.

## II. THE PARTIES' APPEALS AND CROSS-APPEALS

### A. Johnson and Cummings's appeal

After the trial court denied their motion for new trial, Johnson and Cummings filed their notice of appeal. On appeal, Johnson and Cummings argue the trial court erred in granting Appellees' motions for partial summary judgment and in declaring that the Cornell Deed conveyed a fixed 1/128 royalty interest, contending the court should have instead found that the Deed created a floating 1/16 royalty interest. In response, COG filed its brief, in which all of the other Appellees have joined, arguing that the trial court properly found that the Deed conveyed a fixed 1/128th royalty interest.

### B. The cross-appeals

The Clifton-McCamey Farm Defendants cross-appealed, as did the Clifton-Parker Defendants and the Desert Partners Defendants. In their cross-appeal, the Clifton-McCamey Farm Defendants raise an alternative argument that the Cornell Deed conveyed a fixed 1/128th non-

---

[2] Although the Clifton-McCamey Farm Defendants and the Desert Partners Defendants argued for a different interpretation of the Cornell Deed, and although the Clifton-McCamey Farm Defendants raised counterclaims against Johnson and Cummings, the trial court did not directly address the arguments set forth in their respective summary judgment motions.

participating mineral interest with a corresponding 1/128th floating royalty interest, and the trial court therefore erred in dismissing their counterclaim. In their cross-appeal, the Desert Partners Defendants raise yet another alternative argument, contending that the Cornell Deed conveyed two separate estates: (1) a 1/128th mineral interest in the land; and (2) a fixed 1/128 royalty interest in future leases. The Clifton-Parker Defendants did not file a brief on their cross-appeal.

In addition, COG filed a letter brief, in which several of the other Appellees joined, contending, among other things, that we should construe the Cornell Deed in the manner in which it has been construed in the past, as conveying a fixed 1/128th royalty interest, under the so-called "presumed-grant doctrine" that the Texas Supreme Court recently discussed in *Van Dyke v. Navigator Group*, 668 S.W.3d 366-67 (Tex. 2023).

## III. STANDARD OF REVIEW

We review the grant of summary judgment de novo. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021) (citing *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013)). In a traditional motion for summary judgment, the moving party must demonstrate there are no genuine issues of material fact such that the party is entitled to judgment as a matter of law. *Id*. (citing TEX. R. CIV. P. 166a(c)). When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). And when, as here, both parties move for summary judgment on the same issue and the trial court grants one motion and denies the other, we consider the evidence presented by both sides, determine all questions presented, and either affirm the judgment or render the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *see also Posse Energy, Ltd. v. Parsley Energy, LP*, 632 S.W.3d 677, 686 (Tex. App.—El Paso 2021, pet. denied) ("When cross-motions

7

for summary judgment are filed, a court of appeals considers each motion and renders the judgment the trial court should have reached.").

## IV.  APPLICABLE LAW

### A.  General principles of contract construction

Because none of the parties contend that the Cornell Deed was ambiguous, our primary duty in construing the Deed is to "ascertain the intent of the parties from all of the language within the four corners of the [instrument]." *U.S. Shale Energy II, LLC v. Laborde Properties, L.P.*, 551 S.W.3d 148, 151 (Tex. 2018) (citing *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017). In doing so, we must examine the entire document, and we must seek to harmonize any seemingly inconsistent or contradictory provisions, giving "effect to all provisions so that none will be meaningless." *Id*. (citing *Gilbert Texas Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010)); *Luckel v. White*, 819 S.W.2d 459, 462 (Tex. 1991). In other words, we must take a "holistic approach aimed at ascertaining intent from all words and all parts of the deed." *U.S. Shale Energy*, 551 S.W.3d at 151 (citing *Hysaw v. Dawkins*, 483 S.W.3d 1, 13 (Tex. 2016)).

In interpreting the terms used in a document, unless otherwise defined in the text, courts will adopt a term's ordinary meaning. *Van Dyke*, 668 S.W.3d at 359 (citing *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763–64 (Tex. 2018)). However, we must also be guided by the principle that the text "retains the same meaning today that it had when it was drafted," and therefore, the words used in a deed must be given the meaning they had at that time. *Id.* (citing *Hysaw*, 483 S.W.3d at 13). And as explained below, oil and gas deeds of the era in which the Cornell Deed was drafted used terms that conveyed a certain meaning, which we must consider in discerning the parties' intent. *Id.*

8

## B. The nature of a mineral estate

Because the parties disagree on whether the Cornell Deed conveyed an interest in a mineral estate or a simply a royalty interest—as well as the amount of any such interest—we find it helpful to provide a brief overview of the nature of those interests. A "mineral estate is comprised of five severable rights or attributes: (1) the right to develop; (2) the right to lease—which is also known as the executive interest; (3) the right to receive bonus payments; (4) the right to receive royalty payments; and (5) the right to receive delay rentals." *WTX Fund, LLC v. Brown*, 595 S.W.3d 285, 294 (Tex. App.—El Paso 2020, pet. denied) (citing *Hysaw*, 483 S.W.3d at 9). However, because each attribute of the estate is an independent property right, the various rights may be "severed into a separate interest whether separately conveyed or reserved by the owner." *Ridgefield Permian, LLC v. Diamondback E & P LLC*, 626 S.W.3d 357, 363 (Tex. App.—El Paso 2021, pet. denied) (citing *Concord Oil. Co. v. Pennzoil Expl. & Prod. Co.*, 966 S.W.2d 451, 453, 457 (Tex. 1998)). Thus, a grantor may independently convey only a royalty interest of a certain size to the grantee without conveying any of the other attributes of the mineral estate to the grantee. *See French v. Chevron U.S.A. Inc.*, 896 S.W.2d 795, 797 (Tex. 1995) (recognizing that a "conveyance of a mineral estate need not dispose of all interests; individual interests can be held back, or reserved, in the grantor"); *see also Luckel*, 819 S.W.2d at 463 (a royalty interest is "a nonpossessory interest in minerals that may be separately alienated"). This is considered a non-participating royalty interest, which carries with it no rights other than to receive royalty payments. *See KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 75 (Tex. 2015) (describing a non-participating royalty interest as "an interest in the gross production of oil, gas, and other minerals carved out of the mineral fee estate as a free royalty" that does not include "the right to participate in the

9

execution of, the [b]onus payable for, or the delay rentals to accrue under oil, gas, and mineral leases executed by the owner of the mineral fee estate").

"Royalty interests may be conveyed or reserved 'as a fixed fraction of total production' (fractional royalty interest) or 'as a fraction of the total royalty interest' (fraction of royalty interest)." *Hysaw*, 483 S.W.3d at 9 (quoting *Luckel*, 819 S.W.2d at 464). A fractional royalty interest, commonly referred to as a "fixed" royalty interest remains constant and is not affected by the royalty amount in an oil, gas, or mineral lease. *Id.* (citation omitted). On the other hand, a "fraction of" royalty interest, commonly referred to as a "floating" royalty interest, varies depending on the royalty in an oil, gas, or mineral lease. *Id.* (recognizing that a floating royalty interest is calculated by multiplying the fraction of the royalty interest by the lease's royalty, which can change over time depending on lease terms.) The language used in the deed determines whether a royalty interest is fixed or floating. *Id.*

Alternatively, a grantor may choose to convey a mineral estate to the grantee, but may then designate certain attributes of the estate it intends to reserve. *See Altman v. Blake*, 712 S.W.2d 117, 118–19 (Tex. 1986). For example, a grantor may convey a mineral estate shorn of all but a royalty interest; importantly, however, a mineral estate grant is not transformed into a royalty interest merely because the grantor chooses to reserve certain attributes of the mineral estate for himself. *Id.*; *see also Greer v. Shook*, 503 S.W.3d 571, 578 (Tex. App.—El Paso 2016, pet. denied) (the mineral interest conveys even if it is "shorn of the executive right and the right to receive delay rentals remains an interest in the mineral fee"). A mineral estate shorn of all attributes but for the right to receive royalty payments is known as a non-participating or non-executive mineral interest. *Lesley v. Veterans Land Bd. of State*, 352 S.W.3d 479, 481 (Tex. 2011). Unless a grantor intends to convey more than one estate to the grantee, the amount of the grantee's mineral interest will

10

determine the amount of royalties to which he is entitled. *See Gibson v. Turner*, 294 S.W.2d 781, 786 (Tex. 1956) (recognizing that unless a deed conveys two separate estates, the "fractional part of the . . . royalties that one is to receive under a mineral lease usually or normally is the same as his fractional mineral interest"). Thus, for example, the grant of a 1/2 mineral interest will come with a corresponding right to receive 1/2 of the royalties in a lease, which in effect makes it a "floating" royalty. *See Greer*, 503 S.W.3d at 592 (where grantor conveyed a 1/2 mineral interest to grantee, it included a corresponding 1/2 floating royalty interest in both existing and future leases) (citing *Concord Oil Co.*, 966 S.W.2d at 457 ("finding that the grantor intended to convey one estate, consisting of a 1/2 mineral interest, which included a corresponding 1/2 royalty interest"); *see also Bank One, Texas Nat'l Ass'n v. Alexander*, 910 S.W.2d 530, 535 (Tex. App.—Austin 1995, writ denied) (a reservation of a 1/16th mineral interest in a deed entitled the grantors to 1/16th floating royalty).

We note, however, that a grantor may decide to convey both an "undivided portion of the mineral estate and a separate royalty interest" in the same land, either in the same or in a separate instrument. *Hysaw*, 483 S.W.3d at 9. These two estates may be of equal size, or the lease holder may convey two interests of a different size. In other words, the lease holder may convey a royalty interest that is "larger or smaller than the interest conveyed in the minerals in place." *Id.* (citing *Luckel*, 819 S.W.2d at 463); *see also Greer*, 503 S.W.3d at 588–89 (recognizing that a grantor may convey two separate estates to a grantee in a mineral deed, which may or may not be of equal size or duration—a concept often referred to as the "two estates" doctrine).

## V. THE CORNELL DEED CONVEYED A MINERAL INTEREST

We first address the question of whether the Deed conveyed a mineral estate stripped of all attributes but for the royalty interest, as the Clifton-McCamey Farm and Desert Partners

11

Defendants contend, or whether it conveyed an independent royalty interest, as the remaining parties contend. For the reasons set forth below, we conclude that the Grantors intended to convey a mineral estate shorn of all attributes but for the right to receive royalty payments on any production on the land.

Important to our decision, we note that a mineral estate is considered an interest in the minerals that are in place on the land prior to production, while in contrast, a royalty interest is simply an interest in receiving payments after the minerals have been produced. *Altman*, 712 S.W.2d at 118–19. Therefore, as Texas courts have consistently held, when a deed provides that it is conveying (or retaining) an interest in the minerals "in and under" the land, such language demonstrates an intent to convey (or retain) a mineral estate. *Id.* (finding deed that conveyed "an undivided one-sixteenth (1/16) interest in and to all of the oil, gas and other minerals in and under and that may be produced from" the land conveyed a mineral interest); *Reed v. Maltsberger/Storey Ranch, LLC*, 534 S.W.3d 51 (Tex. App.—San Antonio 2017, pet. denied) (recognizing that the language used to create an interest in the mineral estate—as opposed to merely an interest in the royalties—is a reference to the oil, gas, and other minerals "in and under" the described land); *Temple-Inland Forest Products Corp. v. Henderson Family P'ship, Ltd.*, 958 S.W.2d 183, 185 (Tex. 1997) (deed stating that "[g]rantor retains title to a 1/16 interest in and to all of the oil, gas and other minerals in and under and that may be produced from said land[,]" standing alone, referred to a reservation of a mineral interest); *Watkins v. Slaughter*, 189 S.W.2d 699, 700 (Tex. 1945) (recognizing that a deed retaining an interest "in and to all of the oil, gas and other minerals in and under and that may be produced from said land[,]" without more, would denote the reservation of a mineral estate). As our sister court has recognized, the term "in and under" has "become a kind of shorthand for a statement that the interest described bears the expense of

production and is therefore to be classified as a mineral interest[.]" *Barker v. Levy*, 507 S.W.2d 613, 615 (Tex. App.— Houston [14th Dist.] 1974, writ ref'd n.r.e.); *see also* Laura H. Burney, *Interpreting Mineral and Royalty Deeds: The Legacy of the One-Eighth Royalty and Other Stories*, 33 St. Mary's L.J. 1, 30–31 (2001). However, the initial clause [in a deed] does not conclusively determine that a mineral interest was created when subsequent language indicates the parties intended to create a royalty interest. *See Bank One*, 910 S.W.2d at 532.

Here, the granting clause in the Deed provided that the Grantors were conveying an "undivided one-one hundred and twenty-eighth (1/128) interest in and to all of the oil, gas and other minerals in and under the following described tracts of land[.]" It then provided the Grantees had the right to receive royalties from production on the land in current and future leases, but provided the Grantees had none of the other attributes of the mineral estate. That is, it stripped them of the right to receive rentals or bonus money under any existing or future leases, and it would "not be necessary for the Grantees to join in any such subsequent lease or leases so made[.]" We find that the Grantors intended to convey a mineral interest shorn of all attributes of the mineral estate but for the royalty interest. *See French*, 896 S.W.2d at 797 (deed whose granting clause conveyed "all of the oil, gas and other minerals, in, under and that may be produced," but provided that the conveyance was a "royalty interest only," conveyed a mineral interest stripped of all attributes except the right to receive royalties).

The remainder of the Cornell Deed describes the nature of the royalty interest being conveyed. However, if we were to focus solely on royalty interest language and ignore the language in the granting clause itself, which speaks of a mineral interest, we would be disregarding our duty to consider the Deed holistically and ensure all provisions are considered and harmonized.

*See Hysaw*, 483 S.W.3d at 13 (cautioning that words in a deed must not be considered in "isolation.").

And here, we can only reconcile the whole Deed by interpreting the granting clause as conveying a mineral estate and the remainder of the Deed as clarifying that the Grantors intended to strip away all attributes of the mineral estate but for the royalty interest.[3] *See French*, 896 S.W.2d at 796–96 (interpreting deed as conveying a non-participating mineral interest, despite fact that deed stated it was conveying "a royalty interest only," where granting clause stated it was conveying an interest in the minerals in place); *Bank One*, 910 S.W.2d at 532 (recognizing that the only way to harmonize a deed in which granting clause used language purporting to convey a mineral interest while remaining provisions referred to royalty interests was to determine it conveyed a non-participating mineral interest stripped of all attributes but for the right to receive royalty payments).

Accordingly, we must now determine the size of that mineral interest and reconcile the varying fractions set forth in the Deed.

## VI. DETERMINING THE SIZE OF THE CONVEYANCE

### A. The inconsistencies in the deed

The granting clause states the Grantors were conveying a "1/128th interest in and to all of the oil, gas and other minerals in and under the following described tracts of land . . . ." If we were to interpret this clause as conveying a 1/128th mineral interest, this would give the Grantees a corresponding 1/128th floating royalty interest. The next provision in the Deed states that the land

---

[3] We similarly do not view in isolation the fact that the Cornell Deed had the term "mineral deed" crossed out and the term "royalty deed" handwritten in. This is consistent with our interpretation that the Grantors intended to convey a mineral estate stripped of all attributes but for the royalty interest—the notation simply reflected that this was the only attribute of the estate being conveyed. The question mark next to the marked-out term "mineral deed" suggests that the parties may have been unsure about how to label the conveyance.

is currently under an oil and gas lease with a 1/8th royalty, and thus, if the Grantees only had a 1/128th mineral interest, they would be entitled to only a 1/1024th (1/128th of 1/8) share in the production. However, the next provision states that the Grantees are entitled to a 1/16th interest in that lease, which would provide them with a 1/128th (1/16 of 1/8) share in the production—a much larger share than a 1/128th mineral interest would convey. As well, the future lease clause provides that the Grantees were entitled to receive 1/16th of the usual 1/8th royalty, which again—assuming a lease with a 1/8th royalty would give them a 1/128th share in production. How then can we reconcile these conflicting fractions? We do so by applying two doctrines applicable to deeds of this era: the estate-misconception doctrine and the legacy of the 1/8th royalty. Before doing so, we explain why we disagree with the Cross-Appellants' approach in their attempts to reconcile the differing fractions.

### B.  Cross-Appellants' arguments

The Clifton-McCamey Farm Defendants contend that we should interpret the language in the granting clause in the Cornell Deed as conveying a 1/128th mineral interest with a corresponding 1/128th floating royalty interest. They look solely to the granting clause and the future lease clause, pointing out that both clauses use the fraction 1/128. And they conclude that this interpretation is the only way to harmonize all provisions in the Deed. However, their interpretation overlooks the existing lease clause providing for a 1/16th royalty interest in the then-existing 1/8th royalty leases on the property (a 1/128th share of the production), which gives the Grantees a much larger share of production than a 1/128th mineral interest would convey (a 1/1024th share of production). In addition, it overlooks the double fraction in the future lease clause providing for a royalty interest equivalent to 1/16th of the "usual 1/8th royalty," which again would give the Grantees a much larger royalty than a 1/128th mineral interest would convey. And

the Clifton-McCamey Farm Defendants provide no explanation for how we are to harmonize these conflicting provisions.

The Desert Partner Defendants provide us with a slightly different approach, contending that the Deed created a 1/128th mineral interest but then conveyed a second estate in the future lease clause, conveying a larger, fixed 1/128th royalty interest in all future leases, utilizing the two-grant theory. *See Greer*, 503 S.W.3d at 588–89 (recognizing that a grantor may convey two separate estates to a grantee in a mineral deed, which may or may not be of equal size or duration—a concept often referred to as the "two estates" doctrine) (citing *Richardson v. Hart*, 185 S.W.2d 563, 564 (Tex. 1945) (construing deed as conveying two separate and distinct estates in the land)). This approach suffers from similar defects as the Clifton-McCamey Farm Defendants' approach. As the Desert Partner Defendants themselves recognize, if we were to construe the deed as conveying a 1/128th mineral interest, the Grantees would only be entitled to a 1/1024th share of production in the existing leases and yet, as set forth above, the existing lease clause conveys a larger royalty interest of 1/16th of the 1/8th royalty provided in the leases, or a 1/128th share in production. And they further concede there is a "presumption that royalty interests should be proportionate to the mineral estate received." *Patrick v. Barrett*, 734 S.W.2d 646, 648 (Tex. 1987). However, the Desert Partners Defendants fail to address the inconsistency between the granting clause and the existing lease clause; instead, they leap to the future lease clause, contending it conveyed a separate estate consisting of a fixed 1/128th royalty interest, an admittedly larger estate than the granting clause provided.[4] And, although the Desert Partners Defendants point out that

---

[4] We also note that the Desert Partners Defendants fail to address whether they believe that the 1/128th mineral estate conveyed was intended to be a temporary estate (to expire at the termination of the existing leases) or a permanent estate (to exist in addition to the grant of the fixed 1/128th royalty interest). Nor is there any language in the Cornell Deed that would convince us that the Grantors intended to convey two estates, whether of a temporary or a permanent nature. *Cf. Pan Am. Petroleum Corp. v. Texas Pac. Coal & Oil Co.*, 340 S.W.2d 548, 557 (Tex. App.—El Paso 1960, writ ref'd n.r.e.) (two estates were conveyed when the deed clearly stated that grantees were to be given a temporary 1/4 royalty interest in three existing leases on the property as well as a permanent 1/32 interest in the mineral estate).

the leases described in the Deed no longer exist, we cannot simply ignore the existing lease clause in our analysis.

As our task is to harmonize all provisions in the Deed, we do so by applying the estate-misconception doctrine and the legacy of the 1/8th royalty doctrine without resorting to a two-grant theory. *See Concord Oil*, 966 S.W.2d at 458–59 (rejecting argument that a deed with conflicting fractions conveyed two estates of differing magnitudes and duration, where court was able to reconcile and harmonize the deed's use of conflicting fractions in concluding that only one estate was conveyed).

### C. The estate-misconception doctrine

As the court in *Van Dyke* recently observed, special rules apply to interpreting deeds of a certain era that contain conflicting fractions. *Van Dyke*, 668 S.W.3d at 363. The first is the "estate-misconception doctrine," which "reflects the prevalent (but, as it turns out, mistaken) belief that in entering into an oil-and-gas lease, a lessor retained only a 1/8 interest in the minerals rather than the *entire* mineral estate in fee simple determinable with the possibility of reverter of the entire estate." *Id*. at 363 (citing *Hysaw*, 483 S.W.3d at 10); *Concord Oil Co.*, 966 S.W.2d at 460). Therefore, as the court explained, "for many years, lessors would refer to what they *thought* reflected their entire interest in the 'mineral estate' with a simple term they understood to convey the same message: '1/8.'" *Id.* "This widespread and mistaken belief ran rampant in instruments of this time involving the reservation or conveyance of a mineral interest—so much so that courts have taken judicial notice of this widespread phenomenon." *Id*. (citing *Hysaw*, 483 S.W.3d at 9–10). The court explained that the very use of 1/8 in a double fraction in a deed of this era "should be considered patent evidence that the parties were functioning under the estate misconception." *Id.* (citing Laura H. Burney, *The Regrettable Rebirth of the Two-Grant Doctrine in Texas Deed*

17

*Construction*, 34 S. TEX. L. REV. 73, 90 (1993); *see also Hysaw*, 483 S.W.3d at 10–11 (recognizing that "there is 'little explanation' for the use of double fractions to express a fixed interest absent a misunderstanding about the grantor's retained ownership interest or use of 1/8 as a proxy for the customary royalty.") (citations omitted). As the court explained in *Hysaw*, when a landowner laboring under this misconception conveyed a mineral interest to a third party in land that was already subject to a lease, he would often use a fraction of 1/8 to express what interest he intended to convey. *Hysaw*, 483 S.W.3d at 10. And in light of this widespread misconception, the Texas Supreme Court recently held that there is a "rebuttable presumption that the term 1/8 in a double fraction in mineral instruments of this era refers to the entire mineral estate." *Van Dyke*, 668 S.W.3d at 360, 364.

Here, as the Appellees point out, we do not have a double fraction in the granting clause, and therefore, they contend the *Van Dyke* presumption does not apply. However, the estate-misconception doctrine is applicable not only when a deed contains a double fraction but also when it uses a fraction that is a multiple of 1/8. As an example, the court in *Hysaw* noted that a grantor who has "leased the entire mineral estate, but desires to sell-one half [sic] of the minerals, would assume that he owned 1/8 of the minerals due to the existing lease . . . [and] would use the fraction 1/16, or a double fraction, 1/2 of 1/8, to convey 1/2 of what he perceived he owned." *Hysaw*, 483 S.W.3d 10 (quoting Laura H. Burney, *The Regrettable Rebirth of the Two–Grant Doctrine in Texas Deed Construction*, 34 S. TEX. L. REV. 73, 89 (1993). In other words, the estate-misconception doctrine may apply in situations in which the granting clause contains a double fraction, such as 1/2 of 1/8th, as well as when it contains a multiple of a 1/8th fraction, such as 1/16th. *Compare Van Dyke*, 668 S.W.3d at 368 (deed reserving a "one-half of one-eighth of all minerals and mineral rights" in said land reserved a 1/2 mineral interest); *with Greer*, 503 S.W.3d

at 580 (Tex. App.—El Paso 2016, pet. denied) (deed with a granting clause conveying a 1/16th mineral interest interpreted as conveying a 1/2 mineral interest in light of other provisions in the deed). Accordingly, although we may not necessarily apply the *Van Dyke* presumption in construing the granting clause, we nevertheless apply the doctrine in construing the Cornell Deed.

### D. The legacy of the 1/8 royalty

Our analysis also turns on the related doctrine of the "legacy of the 1/8 royalty" or the theory of "historical standardization," which stems from the "special meaning that 1/8 acquired in the standard-royalty context." *Van Dyke*, 668 S.W.3d at 363. As the Texas Supreme Court has repeatedly noted, oil and gas leases of a "certain vintage" almost invariably set forth a 1/8th royalty, and the prevalent belief was that a royalty interest would always be 1/8. *Id.* (referring to the "near ubiquitous nature of the 1/8 royalty" in oil and gas leases of a certain vintage) (citing *Hysaw*, 483 S.W.3d at 9–10). Thus, "parties would use the term 1/8 as a placeholder for future royalties *generally*—without anyone understanding that reference to set an arithmetical value." *Id.* Accordingly, courts have long recognized that a deed's use of a 1/8th fraction in describing a royalty interest was the result of the parties' erroneous belief about the nature of a royalty interest. *Id.* In fact, the *Van Dyke* court noted that although it was possible the parties to a deed of this era intended a double fraction with the term 1/8 to be "aimed at simple multiplication," it was not aware of any such instances.[5] *Id.* at 364.

---

[5] In their letter briefs, certain of the Appellees argue that the 1951 Deed was outside of this era and that we should not apply these special rules of construction in interpreting the Deed. They contend that by the early 1930s, both courts and commentators alike understood that an oil and gas royalty may be larger or smaller than 1/8th, citing *Jones v. Bedford*, 56 S.W.2d 305, 308 (Tex. App.— Eastland 1932, writ ref'd) (recognizing that royalties may not always be 1/8th) and A.W. Walker, Jr., *Oil Payments*, 20 TEX. L. REV. 259, 273-74 (1942) (recognizing that "it is not at all uncommon" for royalties to be something other than 1/8th"). We note, however, that although the Texas Supreme Court has not defined what it considers to be the era in which the special rules involving 1/8th fractions apply, it has applied these rules to deeds drafted during the late 1940s and early 1950s, well within the timeframe in which the Cornell Deed was drafted. *See U.S. Shale Energy II, LLC v. Laborde Props., L.P.*, 551 S.W.3d 148, 153 (Tex. 2018) (utilizing the legacy of the 1/8th royalty doctrine in construing a 1951 deed); *Hysaw v. Dawkins*, 483 S.W.3d 1, 6 (Tex. 2016) (applying doctrine to a 1947 will that conveyed a royalty interest); *KCM Fin. LLC v. Bradshaw*, 457

### E. Arriving at a 1/16th mineral interest with a corresponding floating 1/16th royalty interest

As set forth above, the granting clause in the Cornell Deed stated that the Grantors were conveying an "undivided one-one hundred and twenty-eighth (1/128) interest in and to all of the oil, gas and other minerals in and under the following described tracts of land[.]" The 1/128th fraction is a multiple of 1/8 and therefore gives rise to the estate-misconception doctrine—it raises the presumption that the Grantors believed they only retained a 1/8th interest in the mineral estate and rather than conveying a 1/128th interest, they intended to convey 1/16th of what they believed they had. The result is a 1/16th mineral interest conveyance, which has a corresponding 1/16th floating royalty interest, allowing us to reconcile the other ostensibly conflicting fractions used to describe the nature of the royalty interest conveyed. *See Greer*, 503 S.W.3d at 590–91 (use of conflicting fractions demonstrates applicability of the estate-misconception theory).

First, this interpretation reconciles the provisions in the existing lease clause, which provides that the Grantees were entitled to a 1/16th royalty interest in existing leases. A 1/16th mineral interest would give the Grantees a 1/16th floating royalty interest in any existing or future leases, thereby allowing us to harmonize the granting clause with the existing lease clause.

Second, this interpretation also reconciles the provisions in the Deed's future lease clause, which provides that the "Grantees shall only receive under such subsequent lease or leases a 1/128

---

S.W.3d 70, 75 (Tex. 2015) (recognizing that a "one-eighth royalty appears to have been commonplace in the general era in which the 1960 deeds were executed"); *see also WTX Fund, LLC v. Brown*, 595 S.W.3d 285, 296 (Tex. App.—El Paso 2020, pet. denied) (applying doctrine to a 1951 deed). In fact, some courts and commentators have recognized that leases containing royalties larger than one-eighth did not become common until the mid-1970s. *See Graham v. Prochaska*, 429 S.W.3d 650, 657 (Tex. App.—San Antonio 2013, pet. denied) (citing 1 Smith & Weaver, *Texas Law of Oil & Gas* § 2.4[B][1], at 2–64 (2d ed. 1998)) (noting that in the 1970s royalties larger than 1/8th became more commonplace in leases); *see also* II. TITLE AND CONVEYANCING ISSUES, 2016 WL 10609408 ("From the beginning of the oil and gas industry in Texas until the mid-1970s, the lessor's royalty under an oil and gas lease was almost always 1/8."); IV. WHAT COURTS CONSIDER TO DIVINE "OBJECTIVE INTENT," 2019 TXCLE-ACAP 11-IV, 2019 WL 4579707 (noting that "it was not until the 1970s that royalty interests greater than 1/8 became increasingly common.") (citing *Garrett v. Dils Co.*, 299 S.W.2d 904, 907 (Tex. 1957) (taking "judicial knowledge of the fact that the usual royalty provided in mineral leases is one-eighth").

(1/16 of the usual 1/8 royalty) part of all the oil, gas and other minerals taken and saved under such lease or leases . . . ." This classic double fraction, using the term "usual" to refer to the 1/8 royalty, is the exact type of language that triggers the application of the doctrine of the legacy of the 1/8 royalty.[6] *See Hysaw*, 483 S.W.3d at 4 (the double-fraction problem emerges when an instrument expresses a royalty interest as the product of two fractions, such as "1/2 of the usual 1/8"); *see also Graham v. Prochaska*, 429 S.W.3d 650, 658 (Tex. App.—San Antonio 2013, pet. denied) ("When a deed contains a reservation of . . . 'a fraction of the usual one-eighth royalty,' a party may argue that 'one-eighth' should be understood as a stand-in for the landowner's royalty and therefore convey or reserve unto them a floating royalty interest."). And in applying this doctrine, we conclude that the use of the double fraction 1/16th of the "usual" 1/8th royalty is consistent with a description of a floating 1/16th royalty. *See Luckel*, 819 S.W.2d at 462 (in applying the "legacy of the 1/8 royalty," the court construed language granting a 1/4 interest in the "usual" 1/8 royalty as granting a floating 1/4 royalty interest); *see also Coghill v. Griffith*, 358 S.W.3d 834, 837–40 (Tex. App.—Tyler 2012, pet. denied) (holding reservation of "an undivided one-eighth (1/8) of the usual one-eighth (1/8) royalties provided for in any future oil, gas and/or

---

[6] The Clifton-Parker Defendants argue we should not apply this doctrine in interpreting the Deed—because the double fraction was within a parenthetical, which functions as a nonrestrictive dependent clause, it should not be considered central to the meaning of the sentence. And in turn, they argue that we should essentially ignore the incidental information in the parenthetical and instead focus on the single fraction (1/128th) that precedes it. We recognize, as we did in *Bridges v. Uhl*, 663 S.W.3d 252 (Tex. App.—El Paso 2022, no pet.), that information contained in a nonrestrictive dependent clause may, as a matter of grammatical construction, be viewed merely as being helpful, but nonessential information, in interpreting the meaning of a sentence. *Id.* at 265. However, we did not mean to suggest that such clauses should be entirely overlooked when construing a deed, nor can they be. Here, the nonrestrictive dependent clause serves as an explanation of 1/128. Ignoring a double fraction in a deed of this era—regardless of its placement in a nonrestrictive dependent clause—would go against the Texas Supreme Court's directives in both *Hysaw* and *Van Dyke*. As set forth above, in both cases, the court made it clear that when a deed of this era contains a double fraction involving 1/8, there can be little other explanation for its use other than a "misunderstanding about the grantor's retained ownership interest or use of 1/8 as a proxy for the customary royalty." *Van Dyke v. Navigator Group*, 668 S.W.3d 353, 363 (Tex. 2023) (citing *Hysaw*, 483 S.W.3d at 10–11). And as the court recognized, it would "be odd to say one-half of one-eighth rather than simply one-sixteenth if all that was intended by one-half of one-eighth *was* 1/16." *Id.* (citing *Hysaw*, 483 S.W.3d at 12) (internal quotation marks omitted). Accordingly, we conclude that the legacy of the 1/8th doctrine must inform our interpretation of the Deed.

21

mineral leases" described a floating 1/8th royalty); *Hysaw*, 483 S.W.3d at 15–16 (finding that a conveyance of a "one-third (1/3) of an undivided one-eighth (1/8)" royalty interest conveyed a floating or fraction of 1/3 royalty rather than a 1/24 fixed or fractional royalty).

This interpretation of the Cornell Deed harmonizes the future lease clause with the other two provisions in the Deed, i.e., as conveying a 1/16th mineral interest with a commensurate 1/16th floating royalty interest. It is the only way to harmonize the conflicting fractions in the Cornell Deed and give meaning to every provision in the Deed. We therefore conclude the trial court erred in granting the Appellees' motions for summary judgment and in declaring that the Deed conveyed a fixed 1/128th royalty interest.

Appellants Johnson and Cummings's Issue One is sustained, and the issues raised by the Cross-Appellants Clifton-McCamey Farm and the Desert Partners Defendants are overruled.

## VII. THE PRESUMED-GRANT THEORY

In letter briefs filed after the Texas Supreme Court issued its opinion in *Van Dyke*, Appellees raise the issue of whether we should apply the presumed-grant theory in construing the Deed. *Van Dyke* noted the "presumed-grant doctrine, 'also referred to as title by circumstantial evidence, has been described as a common law form of adverse possession.'" *Van Dyke*, 668 S.W.3d at 366 (citing *Fair v. Arp Club Lake, Inc.*, 437 S.W.3d 619, 626 (Tex. App.—Tyler 2014, no pet.)). The doctrine "requires its proponent to establish three elements: (1) a long-asserted and open claim, adverse to that of the apparent owner; (2) nonclaim by the apparent owner; and (3) acquiescence by the apparent owner in the adverse claim." *Id.* (citing *Magee v. Paul*, 221 S.W. 254, 257 (Tex. 1920). The court left open the question of whether a fourth element was required, i.e., a "gap in the title," finding that even if necessary, there was a gap in the title in the deed in

that case that justified the doctrine's application.[7] *Id.*; *see also Balmorhea Ranches, Inc. v. Heymann*, 656 S.W.3d 441, 448–49 (Tex. App.—El Paso 2022, no pet.) (explaining that "gap in title before the Twentieth century" raises presumed-grant doctrine application); *Purnell v. Gulihur*, 339 S.W.2d 86, 92 (Tex. App.—El Paso 1960, writ ref'd n.r.e.) (presumed-grant doctrine was developed with the intent to "settle titles where the land was understood to belong to one who does not have a complete record title, but [said person] has claimed [ownership for] a long time"). Here, there is no evidence of a gap in the record, and Appellees contend the presumed-grant doctrine should lead us to conclude that because the parties construed the Deed as conveying a 1/128th mineral interest for the last 70 years, we should continue to construe it this way.

Regardless of whether we can or should apply the presumed-grant theory here, none of the Appellees raised this issue in their trial court pleadings, in their summary judgment motions, or in their appellate briefing. Like adverse possession, we construe the presumed-grant theory as an affirmative defense that must be pleaded in the trial court to be preserved as an issue for appeal. *Bridges v. Uhl*, 663 S.W.3d 252, 269 (Tex. App.—El Paso 2022, no pet.) (concluding that appellees waived the right to raise the presumed-grant theory on appeal as a basis for supporting the trial court's ruling on summary judgment where they failed to plead presumed grant and the issue was not tried by consent in the trial court, even though Appellees affirmatively pleaded equitable defenses of estoppel, quasi-estoppel, and adverse possession in their answers); TEX. R. CIV. P. 94 ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense."); *see also Vortt Expl. Co., Inc. v.*

---

[7] In *Van Dyke,* the court discussed the presumed-grant theory as a means of confirming that it had correctly interpreted a 1924 deed, recognizing that the parties had similarly construed the deed for over 90 years. *Van Dyke*, 668 S.W.3d at 366. In other words, the court utilized the theory to "remove any remaining doubts" it might have had regarding its interpretation of the deed. *Id.* at 368. Here, we are in an opposite position, as we have concluded the parties have wrongly interpreted the Cornell Deed since it was first drafted in 1951.

23

*EOG Res. Inc.*, No. 11-07-00159-CV, 2009 WL 1522661, at *6–7 (Tex. App.—Eastland May 29, 2009, no pet.) (treating adverse possession as an affirmative defense to a counterclaim brought by mineral estate owners seeking a declaration that an oil and gas operator's lease was no longer in effect); *Haby v. Howard*, 757 S.W.2d 34, 38 (Tex. App.—San Antonio 1988, writ denied) (treating adverse possession as an affirmative defense to a trespass to try title claim). The presumed-grant theory involves factual issues that must be decided by a trial court in the first instance, such as whether any parties had in the past challenged the Deed's interpretation. *See generally Howland v. Hough*, 570 S.W.2d 876, 879–81 (Tex. 1978) (describing the doctrine as being a "presumption of fact" that must be resolved by looking to the evidence presented in the trial court).

Finally, we deny Appellees' request that "in the interest of justice" we remand the matter to the trial court for a determination of whether the doctrine applies, intimating that *Van Dyke* announced this doctrine for the first time (after the parties filed their appeals in this case). Contrary to Appellees' suggestion, the presumed-grant doctrine is not a new theory as of *Van Dyke*. It is a long-standing doctrine Appellees could have pleaded in the trial court. *See Balmorhea*, 656 S.W.3d at 448 (recognizing that the United States Supreme Court described the doctrine as early as 1887 (citing *Fletcher v. Fuller*, 120 U.S. 534, 551 (1887)); *see also Howland*, 570 S.W.2d at 878–79 (discussing the doctrine in 1978).

We therefore conclude that Appellees waived their right to raise this issue for the first time on appeal.

## VIII. CONCLUSION

We reverse the trial court's order granting Appellees' motions for summary judgment, issuing a take-nothing judgment on Johnson and Cummings's claims, and interpreting the Cornell Deed as conveying a fixed 1/128th royalty interest to the Grantees. Although we arrive at the

24

conclusion that Johnson and Cummings were instead entitled to a floating 1/16th royalty interest by different means than they suggested, we render judgment in favor of Johnson and Cummings on their claim for a declaratory judgment. We remand the case for further proceedings on Johnson and Cummings's remaining claims for relief.


LISA J. SOTO, Justice

July 10, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.